UNITED STATES, Appellee

v.

MARIANO ROSATO, Corporal, U. S. Army, Appellant

3 USCMA 143, 11 CMR 143

No. 1375

Decided July 31, 1953

Milton J. Teiger, Esq., and Lt Col Herman P. Goebel, Jr., U. S. Army, for Appellant.

Lt Col Thayer Chapman, U. S. Army, and 1st Lt Robert A. Forman, U. S. Army, for Appellee.

.Opinion of the Court

Robert E. Quinn, Chief Judge:

Appellant was convicted by general court-martial in Germany, on a charge of willful disobedience of the lawful order of a superior officer, in violation of Article 90, Uniform Code of Military Justice, 50 USC § 684. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for three years. The convening authority approved the findings but remitted two years of the confinement. A board of review in the office of The Judge Advocate General of the Army affirmed the findings and sentence as modified. Thereafter we granted the appellant's petition for review to consider the following questions:

"1. Whether the order involved was legal.

"2. Whether the refusal of the accused, based on the advice of counsel, to obey the order constitutes wilful disobedience."

The issues grow out of the following material facts developed by the record of trial: Appellant, questioned relative to an offense, had refused to submit samples of his handwriting by printing the alphabet. This circumstance was related to Captain Jacob Diem, commanding officer of the appellant, who was advised by the staff judge advocate of the command that appellant could lawfully be required to submit the samples desired. Thereafter Captain Diem summoned accused, and, after advising him that Article 31 of the Code, 50 USC § 602, afforded him no protection in this instance, ordered him to print the alphabet. The accused refused, stating he did so on the advice of counsel, on the ground it would tend to incriminate him. The charge of willful disobedience was then preferred.

That no person in a criminal case may be compelled to be a witness against himself is a familiar keystone of our system of justice. From its origin in the early English common law, it was considered sufficiently woven into our concept of fundamental liberty to warrant its inclusion in the Constitution of the United States as the Fifth Amendment. In its historical setting it has been described as the

144

very essence of constitutional liberty far beyond the power of the legislature to alter or amend. Without exception courts have declared that this Amendment must be construed liberally to prevent stealthy encroachment upon, or gradual depreciation of, the rights secured by it. Boyd v. United States, 116 US 616, 29 L ed 746, 6 S Ct 524; Gouled v. United States, 255 US 298, 65 L ed 647, 41 S Ct 261. Dispelling any doubt of its application to the military services, Congress included the substance of the Fifth Amendment in the Uniform Code of Military Justice, as Article 31, supra. We consider the positive direction of this Article sufficiently compelling to invalidate any order issued in violation of its mandate. Consequently, an allegation founded upon disobedience of such an order cannot be sustained as a violation of Article 90, supra. "A person cannot be convicted under this article ·[Article 90] if the order was illegal." Manual for Courts-Martial, United States, 1951, paragraph 169b.

In explanation of this provision of the Code, paragraph 150b, Manual for Courts-Martial, supra, notes that the prohibition relates only to the use of compulsion in obtaining a verbal or other communication in which the individual expresses his knowledge of a matter, and does not forbid compelling him to exhibit his body or other physical characteristics as evidence, when such evidence is material. This portion of the Manual is based upon the doctrine of "testimonial compulsion" enunciated by the United States Supreme Court in Holt v. United States, 218 US 245, 54 L ed 1021, 31 S Ct 2, 20 Ann Cas 1138. See ·Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 238. With this principle, as a principle, we have no difficulty, nor with the logic employed by the many courts in construing it. Guided by this principle many courts have ruled that it is not a violation of the constitutional prohibition against self incrimination to require an accused to: submit to fingerprinting, People v. Jones, 112 Cal App 68, 296 P 317; place his foot in a track near the scene of the crime, Magee v. States, 92 Miss 865, 46 So 529; submit to an examination of his person for scars, O'Brien v. State, 125 Ind 38, 25 NE 137; be forcibly shaved and have his hair trimmed, People v. Strauss, 174 Misc 881, 22 NYS 2d 155; grow a beard, Ross v. State, 204 Ind 281, 182 NE 865; or to try on a garment to determine its fit, Holt v. United States, supra. The Manual notes many of these applications of the doctrine of the Holt case, and adds, "the prohibition is not violated by requiring a person (including an accused) . . . to make a sample of his handwriting." This last statement is directly in conflict with Article 31 of the Uniform Code of Military Justice, supra.

While authorizing The President to prescribe ·the procedure, including modes of proof in cases before courts-martial, Article 36a of the Code, 50 USC § 611, enjoins application of those principles of law and rules of evidence generally recognized in the trial of criminal cases in the United States district courts, deemed practicable, provided such procedures are not contrary to or inconsistent with the Code. The provisions of the Code defining the privilege against self incrimination, and those of the Manual limiting its application, must if possible, be construed so as to give effect to every provision of each. United States v. Lucas (No. 7), 1 USCMA 19, 1 CMR 19, decided November 8, 1951. The accused's contention that the order was, in effect, an invasion of his right against compulsory self incrimination requires us to determine the validity of the Manual's positive declaration that such a requirement is not within the purview of the prohibition in the light of interpretations placed upon the Fifth Amendment by courts of last resort.

In reviewing the subject of compulsory self incrimination, Wigmore, Evidence, 3d ed, §§ 2263, 2264, notes:

". . . the object of the protection seems plain. It is the employment of legal process to *extract from the person's own lips* an admission

of guilt, which will thus take the place of other evidence. . . .

. . . . . .

". . . The privilege protects a person from any disclosure *sought by legal process against him as a witness.*

". . . It follows that the production of *documents or chattels* by a person . . . in response to a subpoena, or to a motion to order production, or to other form of *process treating him as a witness* . . . may be refused under the protection of the privilege; and this is universally conceded. . . ."

In Boyd v. United States, supra, the Supreme Court declared:

". . . it is elementary knowledge that one cardinal rule . . . is never to decree a discovery which might tend to convict the party of a crime, or to forfeit his property. And any compulsory discovery by extorting the party's oath, or compelling the production of his private books and papers, to convict him of crime, or to forfeit his property, is contrary to the principles of a free government. . . .

. . . . . .

". . . we have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself. . . ."

Of especial significance are cases involving the genuineness of the defendant's handwriting. In all instances observed by us, in which law enforcement officers have used specimens of the defendant's handwriting as a basis for comparison, the sole subject of inquiry has been whether the specimen was voluntarily given. In Hartzell v. United States, 72 F2d 569 (CA8th Cir), and Reining v. United States, 167 F2d 362, 365 (CA5th Cir), the defendants' signatures to their bail bonds were declared properly received in evidence for each had been voluntarily affixed. Finally, in Dean v. United States, 246 F 568, 577 (CA5th Cir), it was stated:

". . . We do not think it can be said that the genuineness of a writing, for use as a basis of comparison under the act of Congress, must be proven by any peculiar mode of proof, or that it cannot be inferred from possession, where the circumstances and character of the possession and of the instrument itself are persuasive enough of its authorship. *The defendant's constitutional privilege of refraining from giving evidence against himself* by word of mouth or *by furnishing specimens of his handwriting,* is an additional reason for not construing the act of Congress so as to require a different degree or kind of proof than that ordinarily required to prove the genuineness of handwriting." [Emphasis supplied.]

Although the offense under investigation, at the time the order involved in the instant case was given to the accused, is not fully described, it sufficiently appears that proof of the identity of the author of handwritten documents or instruments was an essential element of that offense. This being so, the document forming the basis of the offense could not be offered in evidence against the accused unless it was shown to have been executed by him. Hartzell v. United States, supra; Reining v. United States, supra; Manual for Courts-Martial, United States, 1951, paragraph 143b. The burden of establishing the genuineness of that document rested, as did the establishment of all other elements of the offense, upon the law enforcement officials. While these officials could seek to enlist the aid of the suspect, after proper warning, they could not lawfully compel him to furnish the one evidentiary fact without which the suspected document would be meaningless. Certain it is, that if law enforcement officials may not lawfully compel the production of self incriminating evidence then in existence, as in Boyd v. United States, supra, a fortiori, these same officials may not lawfully compel an individual to compose and deliver such evidence. The compulsory production of a handwriting specimen goes far beyond the

taking of a fingerprint, placing a foot in a track, an examination for scars, forcibly shaving a man or trimming his hair, requiring him to grow a beard, or try on a garment. Such instances do not involve an affirmative conscious act on the part of the individual affected by the demand. Whereas the printing of the alphabet involves a conscious exercise of both mind and body, an affirmative action. In United States v. Nehemiah Williams (No. 1212), 2 USCMA 430, 9 CMR 60, decided May 1, 1953, we declared that Article 31, supra, permitted an accused to remain absolutely silent regarding an offense of which he was accused or suspected. It follows, therefore, that he may not be compelled, by military orders carrying the awesome sanctions of the 90th Article, supra, or otherwise, to furnish a necessary evidential fact.

We conclude that the order forming the basis of the charge in this case violated the provisions of Article 31, supra, and was therefore void. This conclusion disposes of the second issue. The decision of the board of review is reversed and the charge is dismissed.

Judges LATIMER and BROSMAN concur.