UNITED STATES, Appellant

v.

WILLARD C. MORRIS, Corporal, U. S. Army, Appellee

4 USCMA 209, 15 CMR 209

No. 3834

Decided April 30, 1954

Lt Col William R. Ward, U. S. Army, and Maj Irvin M. Kent, U. S. Army, for Appellant.

Maj Edwin Doran, U. S. Army, Capt William C. Irby, Jr., U. S. Army, 1st Lt Richard C. Shadyac, U. S. Army, and 1st Lt Joseph B. Axelman, U. S. Army, for Appellee.

## Opinion of the Court

Paul W. Brosman, Judge:

A general court-martial tried the accused and found him guilty under a substantial number of charges and specifications—among them a specification alleging that he had stolen a wrist watch of a value of more than $50, in violation of the Uniform Code of Military Justice, Article 121, 50 USC § 715. The convening authority approved the findings and so much of the sentence as provided for dishonorable discharge, total forfeitures, and confinement at hard labor for three years. An Army board of review concluded that the finding of guilty under the specification alleging larceny of the watch was incorrect—although its members affirmed the approved sentence. The basis for this determination of impropriety was that, as to this specification, the accused's privilege against compulsory self incrimination had been violated. The Acting The Judge Advocate General has certified to this Court the question of the soundness of the board's action in reversing this finding—it appearing that the record of trial contained compelling evidence of guilt apart from the evidence which had been obtained improperly.

## II

At the trial—and with reference to the questioned larceny specification—the Government established by deposition that a certain Movada wrist watch belonging to one Donald S. Bell had disappeared from his ranch in Benson, Arizona, at about the time the accused, who was employed thereat, had departed suddenly. The accused's agency of transportation at this time was an automobile which he had stolen from the ranch. The Government offered in evidence a detailed confession by the appellant in which he admitted having taken the watch unlawfully and having pawned it a short time thereafter in El Paso, Texas. After having been advised of his right to testify concerning voluntariness, the defendant took the stand and maintained that agents of the Federal Bureau of Investigation "talked me into making the statement." On cross-examination, however, and following further examination by the court, he admitted that, prior to making the statement, he had been informed of his rights under Article 31 of the Uniform Code, supra, 50 USC § 602; that he comprehended these rights fully; and that he understood as well that the statement might be used against him in a trial by court-martial—which he gathered was forthcoming. He conceded that no threats of force induced the confession and that it was made "voluntarily."

The confession was received by the law officer. Thereafter the prosecution tendered in evidence a wrist watch bearing engraved thereon the name, "Don Bell," which exhibit had been recovered from a pawn shop in El Paso —the locale mentioned in the accused's confession. Trial counsel thereafter sought to offer in evidence two pawn tickets relating to the wrist watch in question—one of which had been se-

cured allegedly from among the accused's personal effects. The law officer rejected this last exhibit, for the reason that he considered that it had been insufficiently connected with the defendant. Following this ruling the Government's lawyer stated that "At this time I request the accused to subscribe his signature, W. C. Morris, five times on this blank piece of paper." The defense objected to this procedure on the ground that no handwriting expert had been called by the Government for the purpose of comparing the pawn ticket signature with any other the accused might execute. This objection was overruled and the appellant, at the law officer's direction, wrote the name, "W. C. Morris," five times on a blank sheet of paper as requested. The law officer's action in requiring him thus to sign his name was—in the board's eyes—an error so grave as to require disapproval of the finding under scrutiny.

## III

Previously—in United States v. Eggers, 3 USCMA 191, 11 CMR 191—this Court considered the admissibility of exemplars of an accused person's signature executed and furnished at the trial pursuant to direction from the law officer. There we declared that the latter's action, which required the accused actively to participate in supplying evidence against himself, constituted error. In addition, we concluded that this error violated the privilege against self incrimination, which the Uniform Code, supra, Article 31, sought to secure to military personnel. Later, in United States v. Greer, 3 USCMA 576, 13 CMR 132, we followed the same approach in holding improper a law officer's action in demanding that the defendant read aloud in open court irrelevant words as a basis for voice identification by an offered witness. There, too, we emphasized that "The accused was deprived of a right secured by the Constitution of the United States and the Uniform Code of Military Justice. Material prejudice resulted as a matter of law. United States v. Clay, 1 USCMA 74, 1 CMR 74." It must be apparent in short that

we regard violations of the privilege against self-incrimination as so serious in nature that —under ordinary circumstances—we are unwilling to affirm a finding of guilt tainted therewith.

## IV

The suggestion is offered that defense counsel here waived the rights of the accused by interposing no objection on the specific ground that the privilege against self incrimination had been infringed by the law officer's requirement that the accused furnish signature exemplars. Admittedly, in United States v. Eggers, supra, we distinguished those cases "in which the defendant voluntarily—albeit on request—wrote his name or other matter" from those instances where the accused supplied the samples *"under express protest."* Granted that the defense counsel's objection was based on the wrong premise, we are sure that the offering of *an* objection to the procedure was sufficient to show that the defendant did not provide the sample "voluntarily" within the meaning of Eggers. Moreover at the time of trial of the case before us now, no pronouncement from this Court had indicated the invalidity of that portion of paragraph 150*b*, Manual for Courts-Martial, United States, 1951, which provides that an accused person may be required to furnish samples of his handwriting, or to speak for the purpose of identification. In view of this circumstance it would be highly inappropriate to hold that there was a waiver of rights *through failure to object to a procedure* specifically authorized by the Manual for Courts-Martial—the military lawyer's "Bible." United States v. Rice [CM 366858, recon], 14 CMR 379. A waiver should normally be predicated only on relinquishment of a *known* right.

## V

However, may not another line of cases be germane to the one at bar? In United States v. Lucas, 1 USCMA 19, 1 CMR 19, we held that, in the face of a plea of guilty, a failure on the part of

the law officer to instruct on the elements of the offense charged—an omission which ordinarily would constitute a violation of military due process—did not compel reversal of a conviction by court-martial. Likewise, if, instead of entering such a plea, an accused voluntarily takes the stand and testifies to circumstances which equate to guilt of the crime charged, he may not claim harm by reason of errors which otherwise would necessitate reversal. United States v. McElroy, 3 USCMA 606, 14 CMR 24 (concurring opinion). These cases reveal that the accused's own conduct may operate to alter our attitude toward the protection of rights, the preservation of which normally would fall within the ambit of military due process or that of general prejudice. Our general premise must certainly be that a violation of the accused's privilege against self incrimination will necessitate reversal regardless of the presence of compelling evidence of guilt. However, is it not possible to say that this generally applicable principle may be affected in its operation by action taken by the accused? If such an estoppel-like possibility exists, then the facts of the instant case would seem to warrant exploration.

It is true that in the instant case, the accused did not testify as a witness on the merits to facts establishing the commission of the offense charged, nor did he—as in Lucas—enter his judicial confession through a plea of guilty. However, he did make and sign an extrajudicial confession of guilt. Moreover, he assumed the stand at the trial for a limited purpose, and, in effect, conceded the voluntary execution of the confession then offered, and admitted that it had been made with a full understanding of his rights under Article 31. Because of this, it is distinctly arguable that he is in no position to take advantage of the violation of Article 31 found here.

It is not necessary, however, that we ground our decision entirely on the accused's written confession *as such*. It is to be observed that his signature appears on that document in no less than eight different places. Accordingly, at the time he was compelled to

furnish samples of his handwriting at the trial, multiple voluntarily executed exemplars of his signature were before the court-martial. The basic assumption underlying the use of testimony of this nature is that handwriting is personalized and remains relatively constant. In light of this assumption, the handwriting exemplars furnished in open court by the accused constituted not merely cumulative evidence, but repetitious evidence as well. The briefest scrutiny of the record of trial corroborates this observation.

It is impossible for us to discern the presence of any sort of purpose which would be served by a retrial of this case. We rest this conclusion in no way on evidence adduced from witnesses other than the accused, or—under this branch of our reasoning—on the damaging contents of his confession itself. To us the significant feature is that, if required as evidence, the eight signatures of the accused placed on his confession—exemplars which were in evidence at the present trial, and which had been furnished voluntarily by the accused—could be offered on retrial. In short, every shred of evidence reflected in the record before us now would be admissible on retrial—save that, instead of thirteen signature samples, the court-martial would be limited to eight for use as a basis for handwriting comparison. That the accused would be in any way the better protected through a confrontation by this lesser number of signatures is difficult to conceive. Application of the so-called compelling evidence rule involves, in a real sense, an evaluation of testimony and other evidence. However, no evaluation whatever is required to support the conclusion that the Government's case with eight signatures would be no less compelling than its case with thirteen. Indeed, within any practical context, it would in both instances be identical.

If the record here served to reveal a calculated effort to invade the accused's privilege against self incrimination, we might well heed a prompting toward reversal in order that a debasement of the court-martial process might be avoided. However, it is clear that no intentional disregard of the accused's

**213**

rights was involved. Instead, it is apparent that all trial personnel—including defense counsel himself—were acting on the not unnatural assumption that the Manual's interpretation of compulsory self incrimination was a permissible one. Cf. United States v. Rosato, 3 USCMA 143, 11 CMR 143; United States v. Eggers, supra.

It is conceivable that the accused may complain that he is the subject of discrimination, in that the disregard of his privilege is accorded less effect than in most instances in which such a violation is found. However, the real distinction in the case at bar stems from his own initial relinquishment—knowingly and voluntarily—of his privilege to do and to say nothing which might operate to provide evidence against him. Having demonstrated less desire than others consistently to invoke the privilege against self incrimination, he can scarcely object if we attribute less significance to a violation of that privilege in his case. One who leaves his door ajar has less cause for just complaint if it is thrust open, than another whose portal was kept tightly bolted. In any event, we are sure that judicial discretion is to be preferred in this area over a doctrinaire position. To reverse in the case at bar would, we feel, constitute a triumph of doctrine over utility. Thus we conclude that the findings of guilty must be approved.

### VI

The certified question inquired whether "the erroneous admission into evidence of Prosecution Exhibit 14 [the five signature exemplars] require[d] disapproval of the findings of guilty of Specification 1 of Charge 2." This question we answer in the negative. The record of trial is returned to The Judge Advocate General, United States Army, for further proceedings in accordance with this opinion.

Judge LATIMER concurs.

QUINN, Chief Judge (dissenting):

I dissent.

A fundamental right of the accused was violated by compelling him to furnish exemplars of his handwriting. United States v. Greer, 3 USCMA 576, 13 CMR 132; United States v. Eggers, 3 USCMA 191, 11 CMR 191. In the absence of waiver, a conviction tainted by such error must be reversed. United States v. Wilson and Harvey, 2 USCMA 248, 8 CMR 48; and United States v. Fisher, 4 USCMA 152, 15 CMR 152. Since the majority concede the absence of conduct calling for the application of waiver, I find no justification for affirming the finding of guilty on the larceny charge. It seems to me that the majority are surrendering a basic constitutional right solely for the purpose of convenience. I cannot sanction such action. See my dissenting opinion in United States v. Sutton, 3 USCMA 220, 11 CMR 220. Certainly if an accused had been deprived of the right to counsel it would make no difference that the evidence incontrovertibly established his guilt. Powell v. Alabama, 287 US 45, 77 L ed 158, 53 S Ct 55. He is entitled to his fundamental rights, and a denial of any such right requires a reversal of his conviction. Accordingly, I would affirm the decision of the board of review.