UNITED STATES, Appellee

v.

WILLIAM P. McGRIFF, Sr., Master Sergeant, U. S. Army, Appellant

6 USCMA 143, 19 CMR 269

No. 6040

Decided July 1, 1955

*First Lieutenant Albert T. Ussery* argued the cause for Appellant, Accused. With him on the brief were *Cornelius Sheldon Whittelsey, III, Esq., Lieutenant Colonel Joseph L. Chalk,* and *First Lieutenant Jackson L. Kiser.*

*Major Stanley H. Rubinowitz* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant Benjamin C. Flannagan.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial in France convicted the accused of a number of offenses in violation of the Uniform Code of Military Justice. He was sentenced to a dishonorable discharge, total forfeiture of pay, and confinement at hard labor for twenty years. The convening authority approved the findings of guilty but reduced the period of confinement to nineteen years. A board of review further reduced the confinement to ten years. We granted review to determine whether the law officer erred in admitting in evidence certain specimens of the accused's handwriting.

A detailed statement of the facts is unnecessary. The evidence indicates that the accused embarked on a course of illegal conduct. Eventually he was apprehended and charged with the commission of thirty-five offenses, which embrace escape from confinement, desertion, impersonating an officer, false official writings, false statement, fraudulent acceptance of unauthorized payments, possession of false leave orders, and larceny by check. The findings of guilty on twenty-one of the offenses were affirmed by a board of review.

On November 4, 1953, the accused signed a written statement admitting that he committed a number of the offenses. Chief Warrant Officer Dawson, adjutant of a Military Police Battalion, testified that ten days later he talked with the accused. Major Polica, the Article 32 investigating officer, and two guards were present at the time. The interview was to obtain the accused's signature on Prosecution Exhibit '11 for "entirely administrative" purposes. The exhibit consisted of four mimeographed copies of the provisions of Article 31, Uniform Code of Military Justice, 50 USC § 602. Immediately after the reproduction of Article 31 appeared a statement that accused understood his rights. This statement was followed by the accused's signature. Typed below the signature, and running over on the back of the page, was a further explanation of the accused's rights, plus a recital that the accused did not desire to say anything or call any witnesses in the pretrial investigation. The back of the page was also signed by the accused. According to Warrant Officer Dawson, Article 31 was read to him; the accused understood his rights; and he voluntarily signed the documents. However, in the cross-examination of Dawson, the accused attempted to show that the writings were made involuntarily.

"Q. As a matter of fact, Mr. Dawson, you and Sergeant—and Major Polica had Sergeant McGriff standing in a corner with his face to the wall for an hour, didn't you?

A. I beg your pardon, sir. I did not.

"Q. Major Polica did in your presence?

A. What the Major did is his perrogative [sic], sir.

"Q. Answer my question. Tell us what you saw, not what his perrogative [sic] is. You say [sic] Sergeant McGriff standing there in the corner with his face to the wall for an hour. Is that right or wrong?

A. I would not say truthfully that I saw him standing there for an hour.

"Q. You saw him standing with his face to the wall, is that right?

A. Yes sir."

Neither the Government nor the accused called the guards as witnesses.

After Warrant Officer Dawson's testimony, the defense counsel moved "that any testimony . . . concerning the instructions under Article 31 to the accused be stricken from the record for the reason that the prosecution has offered this document only as it pertains to signatures." In further argument he referred to the Article 31 advice as "extraneous matter." The law officer granted the motion and instructed the court to consider the exhibits only "with respect to the fact it purports to be an exemplar of the accused's signature." Later when defense counsel raised a general objection to the exhibits, including the signatures, the law officer requested that he state the specific ground of his objection. He replied, "We object for the reason that it appears that the person who procured the signature had the accused standing in the corner for an hour facing the wall."

On November 24, the accused signed both sides of four other copies of the same type of document at the request of Major Polica. He testified that his purpose in obtaining the signatures on Prosecution Exhibit 12 was "to insure I had a written record of the investigation. McGriff [the accused] did not desire to have any witnesses, and I wanted to have a record of it." Major Policia was not cross-examined. However, the accused made the same objection to this exhibit as he had made to Prosecution Exhibit 11.

No evidence, other than that brought out in the cross-examination of Warrant Officer Dawson, was offered by or on behalf of the accused. The law officer overruled the objections and admitted the exhibits as authenticated exemplars of the accused's handwriting. An examiner of questioned documents testified that, in his opinion, the exemplars were made by the same person who signed the checks which formed the basis for a number of the charges.

We have interpreted Article 31 to provide that an accused shall not be compelled to give a sample of his handwriting. United States v. Rosato, 3 USCMA 143, 11 CMR 143; United States v. Eggers, 3 USCMA 191, 11 CMR 191. Initially, therefore, we must determine the question of voluntariness. The testimony in the record clearly indicates voluntariness. The only reference in the record, which even intimates a use of force, was the questions asked by defense counsel in the cross-examination of Warrant Officer Dawson. Major Polica, who was present, was not cross-examined on the issue. Nor were the two guards, also present, called as witnesses. Other than this, there is nothing to remotely suggest duress as to either group of exemplars. According to Major Polica, the signatures obtained by him were solely for the purpose of obtaining a written record of the investigation. He wanted such a record because the accused, despite allegations of many serious offenses against him, did not desire to have witnesses called on his behalf during the pretrial investigation. Dawson also testified that the only reason he wanted the specimens was for the purposes of administration. Certainly these explanations are reasonable, and apparently the accused was satisfied because he did not question this testimony on cross-examination. The Government's evidence shows voluntariness. Therefore, the burden of going forward is on the accused.

The only evidence remotely relating to the use of force was that, when under guard, the accused was kept standing in a corner facing the wall of Major Polica's office. Does this indicate compulsion? It seems to us that, if anything, it raises merely an "indication" of involuntariness. United States v. Josey, 3 USCMA 767, 14 CMR 185.

**145**

We note that the accused was also charged with escape from confinement and desertion. Thus, requiring him to stand in the corner might be a reasonable mode of preventing an escape. However, interpreting the evidence in the light most favorable to the accused, and assuming that he was compelled to stand in a corner, there is no indication that he was thereby deprived of his mental freedom to refuse to give the requested samples of his handwriting. There is no connection between the two incidents. United States v. Monge, 1 USCMA 95, 2 CMR 1. The law officer was justified in concluding that the handwriting specimens were voluntarily obtained.

Aside from the question of voluntariness, the accused contends that the evidence fails to establish that he was properly warned as required by Article 31(b).

The necessity of a warning was considered in United States v. Ball, 6 USCMA 100, 19 CMR 226. The majority of the Court in that case held, "a handwriting specimen is inadmissible only when obtained under some form of compulsion from one accused or suspected of crime." The author of this opinion does not accept that conclusion, and there has been nothing presented in this case to change his views. However, the *Ball* case is the law.

The decision of the board of review is affirmed.

Judges LATIMER and BROSMAN concur.