UNITED STATES, Appellee

v

ROY MINNIFIELD, Basic Airman,
U. S. Air Force, Appellant

9 USCMA 373, 26 CMR 153

No. 10,656

Decided June 20, 1958

*Captain Richard C. Bocken* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ellis L. Gottlieb.*

*Major Fred C. Vowell* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Robert W. Michels* and *Lieutenant Colonel John F. Hannigan.*

## Opinion of the Court

HOMER FERGUSON, Judge:

During a two-week period in November–December 1956, five radios were reported stolen from various enlisted personnel stationed at Offutt Air Force Base, Nebraska. The accused was suspected of having committed the thefts and was interrogated by an Air Police investigator. Before starting the investigation, the accused was advised of his rights under Article 31 of the Uniform Code of Military Justice, 10 USC § 831. A handwriting exemplar was requested which the accused was told he did not have to give unless he wished to. He gave the exemplar as well as two written statements in which he admitted responsibility for the theft of the radios.

In his trial before general court-martial for the theft of the five radios, the prosecution, after first presenting a prima facie case, sought the introduction in evidence of the exemplar and the statements made by the accused. Defense counsel made timely objection to their admission on the ground they had been involuntarily obtained. The accused took the stand and offered testimony on this limited issue. He claimed that an investigator had told him that if he confessed, it would go easier on him and that "they'd drop some charges on me and drop forgery and all of that and I'd just probably get maybe a special court martial and can't get over six months." The accused then requested permission to speak to his first sergeant and after discussing it with him, "he told me if I'd tell I could get off with a special court martial and just get six months out of it, go ahead on and tell him." When the investigator returned to the room, the accused executed a written statement which he signed. When this was completed, the investigator "laughed and said, 'Well, I got you now.'" He further testified that he would not have given either the exemplar or the statements had he not been told that by doing so he would "get off easy."

In rebuttal, the prosecution presented evidence in direct conflict with the testimony of the accused concerning the question of improper inducements. The exemplar and the confessions were subsequently admitted in evidence. In charging the court-martial prior to its deliberations on findings, the law officer instructed on the issue of voluntariness as it pertained to the accused's confessions. Although the issue was also present with respect to the handwriting exemplar, no similar instruction was given. After deliberating a short time the court found the accused guilty of all charges and specifications.

We granted the accused's petition for review to consider claims of instructional error. It is first asserted that the law officer erred by incorrectly instructing the court on the issue of voluntariness as it pertained to the accused's confessions. Additionally, it is contended that the law officer erred in failing to instruct on the issue of voluntariness in regard to the handwriting exemplar. We shall consider these alleged errors in the order presented.

I

The law officer's instruction which is here challenged on the issue of involuntariness was as follows:

"You are advised that my ruling, receiving in evidence Prosecution Exhibits 13 and 14, the out-of-court statements of the accused with respect to the offense of larceny, is final only on the question of admissibility. My ruling merely places the statements before the court; it does not conclusively establish the voluntary nature of the statements. You, in your deliberations upon the findings of guilt or innocence, may come to your own conclusions as to the voluntary nature of the statements.

**375**

"It is recognized that involuntary statements are often untrustworthy and unreliable, therefore the voluntariness of the statements before you here constitutes a matter you should consider in determining what weight, if any, you are to give to the statements. In deciding this latter question, you should not be affected in any way by the circumstance that I have permitted these statements to be received in evidence." [Emphasis supplied.]

It is not disputed that the italicized portion of the above instruction is indistinguishable from the instruction which was disapproved in United States v Jones, 7 USCMA 623, 23 CMR 87. We held in that case that where voluntariness is in issue, "it must be decided by the court members in accordance with the Federal and Manual rule, unfettered by any simultaneous considerations of weight and credibility. That is, the court members will only determine the credibility and weight of the confession if they have first found that it was voluntarily made." Paragraph 140a, Manual for Courts-Martial, United States, 1951; accord, United States v Schwed, 8 USCMA 305, 24 CMR 115; United States v Farrell, 8 USCMA 308, 24 CMR 118; United States v Scott, 8 USCMA 309, 24 CMR 119; United States v Ford, 8 USCMA 311, 24 CMR 121; United States v Perry, 8 USCMA 401, 24 CMR 211; United States v Baker, 8 USCMA 476, 24 CMR 286.

The Government in an effort to avoid the effect of our holding in *Jones*, supra, contends that the in- struction though erroneous was rendered harmless by reason of the fact that the issue of voluntariness was not raised by the evidence. It is unnecessary to dwell at length on this contention. The law officer by his instructions concluded the issue was raised; the staff judge advocate in his review was of the opinion the issue was "presented;" and the board of review in the exercise of its fact-finding powers found in its memorandum opinion that the accused's testimony "although far from being the most persuasive we have encountered, was sufficient to reasonably raise the issue of voluntariness in reference to the statements made by him." After carefully examining the record, we too are satisfied the question of voluntariness was definitely placed in issue and that the law officer, the staff judge advocate, and the board of review did not err in arriving at the same conclusion.

It is next contended that any deficiency in the instruction was effectively waived by defense counsel's failure to object or request clarification. The *Jones* case, supra, is relied on in support of this contention. There, we applied the doctrine of waiver where the instruction given by the law officer was the one specifically requested by defense counsel. Such, however, is not our case here, where the law officer gave the instruction on his own initiative. The board of review, in disposing of this contention, said in its memorandum opinion:

"... We find a decided distinction between instructions which are given by the law officer upon request by defense counsel and the same instructions given by the law officer absent such a request. In one situation the giving of the instructions is directly attributable to an act of the defense counsel, where as in the other situation the instructions are attributable not to defense counsel but to the law officer. This distinction is not novel, for it is the basis of the self-induced error rule to the effect that the defense counsel may not induce error and thereafter complain that the accused was prejudiced thereby (ACM 9036, Morgan, 17 CMR 584, and cases cited)."

There is little we can add to the force of this reasoning.

The final prop relied upon by the Government to support its position that the erroneous instruction did not prejudice the accused is that the evidence of guilt was compelling. The board of review, although recognizing the instructional error on the issue of voluntariness, concluded the error was rendered harmless

376

because of compelling evidence of guilt. Subsequent to the board's decision, however, we had specifically held that failure to correctly instruct the court-martial on the issue of voluntariness in its deliberations on the findings constituted prejudicial error irrespective of the compelling nature of the evidence. United States v Yearty, 8 USCMA 191, 23 CMR 415; United States v Reynolds, 8 USCMA 314, 24 CMR 124; United States v Welch, 8 USCMA 315, 24 CMR 125. In the light of these decisions, the board of review erred in its conclusion. The first granted issue is resolved in favor of the accused.

## II

It still remains to be considered whether the law officer erred in not instructing on the issue of voluntariness in regard to the handwriting exemplar. The accused's testimony, which we have previously held was sufficient to raise the issue with regard to the confessions, is equally applicable with regard to the exemplar. The question of voluntariness in connection with handwriting samples has in the past been the subject of conflicting views. In United States v Rosato, 3 USCMA 143, 11 CMR 143, a unanimous Court held that an order to an accused to submit samples of his handwriting was illegal and that any provision in paragraph 150b of the Manual, supra, to the contrary, was in direct conflict with Article 31, supra. Accord, United States v Eggers, 3 USCMA 191, 11 CMR 191. Although we recognized that law enforcement officers may properly seek to enlist the aid of a suspect in furnishing such samples, they cannot "lawfully compel him" to furnish them. United States v Rosato, supra.

In United States v Morris, 4 USCMA 209, 15 CMR 209, the accused was convicted of stealing a watch. In attempting to prove his signature on a pawn ticket, trial counsel requested that the accused ascribe his signature five times on a piece of paper which had been marked as a prosecution exhibit. Defense counsel objected to this procedure; however, the objection was overruled and the accused, at the law officer's direction, complied with the trial counsel's request. The Government had previously offered in evidence a detailed confession by the accused in which he admitted having taken the watch unlawfully and having pawned it. He admitted that prior to making the statement he had been warned of his rights under Article 31 and that he understood those rights fully. A majority of the Court affirmed the conviction, notwithstanding the fact that the accused was improperly required to execute the handwriting specimens. They reasoned that since the accused's signature had appeared in the confession a number of times and inasmuch as he had conceded its voluntary execution, the incriminating evidence furnished in open court constituted "not merely cumulative evidence, but repetitious evidence as well." Accordingly, they concluded that under these circumstances a rehearing would be useless. The Chief Judge filed a dissenting opinion because he felt that "a fundamental right of the accused was violated by compelling him to furnish exemplars of his handwriting" and, in his view, a conviction tainted by such error should not be permitted to stand.

In United States v Ball, 6 USCMA 100, 19 CMR 226, the question before the Court was whether exemplars obtained by unlawful inducement and without proper warning were admissible. A majority of the Court held that in the absence of compulsion or coercion, a handwriting specimen obtained by improper inducements would be admissible since Article 31(a) would be inapplicable because the lack of compulsion and "Article 31(b) and 31(d) would not have been involved, for there would have been present no 'statement' by the accused." The Chief Judge, concurring in the result, found the majority's construction of Article 31 "unrealistically restrictive." He voiced the sentiment that Article 31 should be read as a whole and "not be cut up into little pieces nor dissected with an alleged judicial scalpel." Specifically, he was of the opinion that handwriting specimens constituted "statements" within the meaning of Article 31 and as such could not be obtained from an ac-

cused without first warning him of his rights under the Article. He also differed with the majority's conclusion that the exemplars were "admissible even though obtained by unlawful inducement."

The next case to reach this Court involving exemplars was United States v McGriff, 6 USCMA 143, 19 CMR 269. The question there was whether the exemplars had been voluntarily obtained. The Court, after reviewing the evidence, concluded the Government had satisfactorily shown voluntariness and the burden was then on the accused to show otherwise which he was unable to do. The Court's opinion, which was authored by the Chief Judge, also discussed the question of whether the specimens were rendered inadmissible on the ground the evidence had failed to establish that the accused had been warned under Article 31. The opinion concluded that under the Court's holding in the *Ball* case, supra, a warning was unnecessary. The author judge, however, took pains to point out that though he did not accept this holding "the *Ball* case is the law."

In the instant case, no question is presented concerning a failure to warn prior to the request to furnish the exemplar. The accused concedes he was warned; however, he contends the exemplar, as well as the statements, resulted from improper inducements. From this circumstance, he argues that the issue of voluntariness as to the exemplar should have been submitted to the court-martial for its consideration in the same manner as the statements. This very same argument was made before the board of review which disposed of the accused's contention in the following manner:

". . . we find no support for the contention of appellate defense counsel that if an issue of voluntariness is raised with respect to an accused's handwriting exemplar, it becomes a matter for the court and not the law officer to determine. The fundamental reason for excluding involuntary confessions is that such confessions may well be untrustworthy in that an accused might possibly confess a crime he has not committed. We find no way in which the issue of involuntariness would touch upon the trustworthiness of a handwriting exemplar as it does that of a confession."

While we appreciate the fact that the issue of voluntariness does not touch upon the trustworthiness of the exemplars, we believe this presents the question in too narrow a fashion. The real issue is simply whether or not a court-martial should be permitted to consider a handwriting specimen which it determines was involuntarily obtained. It seems to us that to say a handwriting specimen does not constitute a "statement" within the meaning of Article 31 is to give that Article the most restricted interpretation possible. As any lawyer who has ever practiced criminal law well knows, a specimen of an accused's handwriting is often as incriminating and damning as the most completely documented confession. In prosecuting numerous offenses such as forgery, larceny by check, embezzlement, false pretenses, false official statements, and fraudulent claims— just to mention a few—a specimen of an accused's handwriting often spells the difference between conviction and acquittal. To say that before a confession, which generally bears an accused's signature, can be admitted in evidence, it must be shown that Article 31 has been complied with and that no unlawful inducements were made, whereas such prerequisites may be dispensed with when exemplars are involved, completely ignores the practicalities of the situation. If the purpose of an Article 31 warning is to avoid impairment of the Constitutional guarantee against compulsory self-incrimination, then there can exist little difference between condemning one's self by mouth and condemning one's self by hand. This is especially so when it is remembered that Article 31 "is wider in scope than the Fifth Amendment." United States v Musguire, 9 USCMA 67, 25 CMR 329. To exclude exemplars from the thrust of Article 31 because they do not literally constitute "statements" represents a flimsy and artificial technicality which

isolates a single word from an entire concept.

If this Court is to succeed in preserving the Uniform Code of Military Justice as a truly living document, it cannot permit a gradual whittling away of an accused's most important safeguard until nothing is left of it but a heap of bare bones. In times of stress, as well as in times of calm, it is a liberal and enlightened, rather than a narrow and grudging, application of Article 31 that is best calculated to insure to the military the preservation of our traditional concepts of justice and fair play. We would imagine that but slight inconvenience would be occasioned by requiring military law enforcement officers, before enlisting an accused's aid in obtaining incriminating samples of his handwriting, to warn him of his rights and at the same time refrain from tempting him with improper inducements in order to obtain such evidence. Judging by the large number of cases which reach this Court in which confessions are found which have been properly obtained, we suspect the work of such law enforcement officers has not been effectively hindered or curtailed by the presence of Article 31.

So that there will be no misunderstanding as to the position this Court now takes, we specifically hold that an accused's handwriting exemplar is equated to a "statement" as that term is found in Article 31. It follows, therefore, that in order to be admissible it must be shown that the provisions of Article 31 have been fully satisfied. When an issue of voluntariness is raised, as it was in the case at bar, it must be submitted under proper instructions to the court-martial for its consideration. Here the law officer erred in not submitting that issue to the court. Anything contained in the case of United States v Ball, supra, United States v Morris, supra, or United States v McGriff, supra, which is contrary to our holding, is hereby expressly overruled.

In addition to the accused's conviction for five specifications of larceny, he was also found guilty of absence without leave in violation of Article 86 of the Uniform Code, supra, 10 USC § 886. The findings of guilt of the latter offense are affirmed. The findings of guilt of all specifications of larceny, however, are reversed and the same set aside. A rehearing as to those offenses may be ordered.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

The significance of this case cannot be overemphasized, for it upsets two areas of well-settled law. My first objection is leveled against that portion of the opinion which permits the court-martial members to further encroach upon the powers of the law officer. Article 51(b) of the Code provides that the law officer of a general court-martial rules on all interlocutory questions, and his ruling is not subject to reversal by the court except in two instances not material here. But if the trend continues, voluntariness will be extended to a point where, for all practical purposes, all rulings on the admissibility of evidence will be subject to redetermination by the court-martial. The primary function of the court is to determine the guilt or innocence of an accused and not to become involved in the collateral questions concerning the legality of the means used to obtain the evidence. The lone exception to this rule which the Manual—and not the Code—gives to the court-martial members is the right to consider the voluntariness of a pretrial confession because its trustworthiness may vary directly with the method of acquisition. But this exception does not apply to the reliability of real evidence which is not weakened even though possession is obtained by inducement or coercion. Consequently, it appears to me that this opinion not only projects voluntariness into the wrong field, but it rewrites the Code under the guise of giving Article 31 a broad and liberal interpretation. I can answer that assertion by suggesting that zeal for liberalism should not be the vehicle by which the meaning of a word or phrase used by Congress is stretched

beyond recognition. As I read Article 31, its proscription is limited to statements which are unlawfully induced, and I have yet to be furnished with any sound reason or good authority for expanding the meaning of the word "statement" to include handwriting exemplars. Rather, I direct the attention of the reader to a line of cases, well-established and founded in good law and logic, which the principal opinion overrules. For that purpose, I present the following quotation from United States v Ball, 6 USCMA 100, 19 CMR 226. In that instance, after a careful consideration of handwriting exemplars which were gained through what we assumed to be unlawful inducement, we concluded:

". . . If, under these circumstances, the accused supplied the desired specimens, there would, nonetheless, be wanting a violation of Article 31 (a) of the Code—this for the reason that no compulsion would have been exercised on the accused, although a lure may have been offered which was so great as to relieve him of any wish to refuse cooperation with the investigating authorities. Article 31(b) and 31(d) would not have been involved, for there would have been present no 'statement' by the accused. Moreover, no shocking abuse of human privacy or essential dignity is to be discerned—like that present, for example, in forcible catheterization. See United States v Jones, 5 USCMA 537, 18 CMR 161. Thus, since they would have been trustworthy and relevant, the handwriting specimens would be entitled to reception in evidence."

United States v McGriff, 6 USCMA 143, 19 CMR 269. Cf. United States v Morris, 4 USCMA 209, 15 CMR 209; United States v Eggers, 3 USCMA 191, 11 CMR 191; and United States v Rosato, 3 USCMA 143, 11 CMR 143.

The distinction between handwriting exemplars and confessions which we made at that time is still sound. Fundamentally, a danger lurks about a confession which is obtained through unlawful inducement because the truth of the accused's words given under those circumstances is most difficult of measurement, and the possibility exists that he admitted more than was actually true. When exposed to coercion, inducement, or mental strain, individuals have been known to confess to crimes they did not commit and experience has taught us that statements made when mental freedom is impaired may not be worthy of belief. But compare this with an unlawfully induced handwriting exemplar. The exemplar can be measured against the questioned writing by a competent graphologist who scientifically determines whether both writings were executed by the same individual. There is no question as to the trustworthiness of this evidence, for it is not the truth of the contents but the graphic symbols themselves which are considered. This same distinction is valid in the case of physical coercion, but evidence obtained in that manner may not be used for another reason, namely, that the force which might be applied if such conduct were sanctioned could result in such brutality by agents of the Government as to shock the conscience of the court. Rochin v California, 342 US 165, 72 S Ct 205, 96 L ed 183.

The principal opinion casts aside the distinction by holding that an instructional deficiency exists because the law officer did not advise the court-martial that, if it found the exemplars were obtained by the use of an unlawful inducement, they must be disregarded as evidence. This ruling opens up a new vista and, as I look forward, I see within the periphery of that holding a concept that, if a murderer is induced to part with the lethal weapon and it is admitted into evidence, the court members must be instructed that, if he did not surrender possession voluntarily, they cannot consider the gun as evidence. Instead of concurring with that sort of concept, I prefer the rule as it has been announced by our previous cases.

I would affirm the decision of the board of review.