UNITED STATES, Appellee

v

JOHN T. KOWERT, Technical Sergeant, U. S. Air Force, Appellant

7 USCMA 678, 23 CMR 142

No. 9017

Decided April 5, 1957

*Captain Richard C. Bocken* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Stanley S. Butt* and *First Lieutenant James P. Lundy.*

*Major Fred C. Vowell* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis P. Murray.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was brought to trial before a special court-martial on two specifications alleging the wrongful appropriation of a sum of money (specifications 1 and 2, Charge I), a specification alleging a false official statement (Charge II and its specification), and a charge of dishonorably failing to repay a loan from the American Express Company in the sum of $400.00 (Charge III), in violation of Articles 121, 107, and 134, respectively, of the Uniform Code of Military Justice, 10 USC §§ 921, 907, and 934. He pleaded guilty to Charge II and not guilty to the others, but was convicted of all charges and sentenced to a bad-conduct discharge and confinement at hard labor for two months. The convening authority approved the sentence but suspended the execution of the discharge. A board of review affirmed. We granted review to

**679**

consider the admissibility of certain evidence.

At all times important to the case, the accused, who has almost nineteen years of military service to his credit, was the first sergeant of his squadron. A unit party was scheduled for the night of March 16, 1956. Second Lieutenant L. L. Lively was the designated Officer in Charge. Part of his responsibility included the collection of $3.00 from each member of the squadron to defray the costs of the party. However, the actual duty devolved upon the accused. According to the evidence, including the accused's testimony, he collected about $183.00 on March 15, and on March 16, the night of the party, he paid out approximately $145.00, leaving somewhat over $37.00 as a balance. Sometime during the party, Major J. F. Herrmann, Jr., the squadron adjutant, directed Lt. Lively and the accused to submit an accounting the "first thing next morning." The accounting was to be held at 10:30 a. m. in the Squadron Orderly Room.

Earlier, the accused had also been directed to assist Second Lieutenant R. T. Cassidy in the collection of contributions for the American Red Cross. Each contributor signed a form indicating his name and the amount of his contribution. If a contributor gave more than $1.00, he also received a card from the accused. "[D]uring the week or on the following Monday," all current contributions were turned over to Lt. Cassidy. For two weeks no question arose regarding the accused's account. Sometime during the week ending on March 17, the accused received $2.00 from Lieutenant Colonel Smith. The latter signed the donor form and received the regular card.

On Saturday, March 17, the morning fixed for the party fund accounting, the accused was awakened by Major Herrmann at 8:45 a.m. and directed to report to the Orderly Room. He appeared there about half an hour later. Apparently, on the accused's arrival, the major questioned him about his American Express Company loan. The accused represented that he would go to the American Express Company office

and return with a receipt evidencing payment in full. The major gave him until 10:00 a.m. to accomplish his purpose. The accused did not return at that time. At 10:30 a.m. Lt. Lively appeared for the accounting, but the accused had still not returned. At noon, the lieutenant departed leaving instructions with the Charge of Quarters to advise the accused to communicate with him on his return.

In his testimony the accused stated that he returned to the Orderly Room at about 1:00 p.m. He found no one there. Consequently, he left the squadron area. He stayed away for the remainder of the week-end and came back on Monday, March 19, at 1:00 a.m. He "signed in," changed clothes, and again signed out on "proper orders," which had been approved on February 24. Parenthetically, Major Herrmann testified in rebuttal that he had revoked his approval for the accused's leave, and that the accused was in an unauthorized absence status between March 17 and March 27. The major was asked to produce the morning reports for the period, but trial counsel objected on the ground that the accused was not charged with an unauthorized absence. No evidence on the accused's absence status was presented. In any event, the accused returned on March 27. As soon as he "signed in," he was ordered in arrest in quarters. According to the accused, throughout his absence he had kept Colonel Smith's $2.00 Red Cross contribution and the $37.00 remaining from the squadron party in his wallet, separate and apart from his own money. He had the money with him on his return, and he still had it at the time of trial. Moreover, when placed in arrest he asked a sergeant to tell Lt. Lively to communicate with him "at his convenience." The message was conveyed to the lieutenant, but he did not go to see the accused.

The morning after the accused's arrest, he was brought before Lieutenant Colonel Smith for questioning. The colonel testified that he informed the accused of the offenses of which he was suspected and advised him of his rights under Article 31, Uniform Code of Military Justice, 50 USC § 831. Asked by

trial counsel whether the accused had made any statements to him, the colonel replied that he had, "in answer to particular questions." In pertinent part his testimony is as follows:

"A First question was, 'Did you understand that you were to meet Lt Lively at 1030 hours on the 17th of March to return the balance of the party money?' His answer was: 'I understood that I was to meet him sometime Saturday morning.' Next question: 'Where is the money which is left over from the party?' And he answered: 'I decline to answer under the provisions of Article 31, sir.' Next question: 'Was this the identical same money or did you have some of it and replace it by money of your own or some you have borrowed?' His answer: 'I decline to answer.' Next question: 'How much money was left?' . . .

"Q Did you receive or did he make any affirmative answer relative to questioning on this particular suspected offense?
A He did not, sir.

• • • • •

"Q . . . did you question him regarding the $2.00 you gave to him for the Red Cross?
A I did.
"Q What was your question?
A The question was: 'Did you turn in to Lt Cassidy the $2.00 Lt Col Smith donated to the Red Cross?' His answer thereto: 'I don't believe I did, sir.'
"Q Did he answer any other questions relative to this particular suspected offense?
A No, sir, he did not.

• • • • •

"Q Very well, sir. Did you question the accused during this interrogation on the 28th of March relative to this alleged debt?
A I did.
"Q And, his response thereto?
A The first question was: 'Did you borrow $400.00 from the American Express Company, Incorporated'? His answer: 'Yes, sir.' . . . Question: 'Do you have any intentions of paying this debt?' Answer: 'Yes,

sir, I do.' Question: 'What action did you take to have Sergeants Levine and Estes see Major Herrmann in regards to this debt?' Answer: 'I'll not answer that, sir, under provisions of Article 31.'"

Citing this Court's decision in United States v Armstrong, 4 USCMA 248, 15 CMR 248, the board of review below held that it was error to admit evidence of the accused's refusal to answer "under the provisions of Article 31." It concluded, however, that the other evidence of the accused's guilt was so compelling that the error was not prejudicial. We agree with the board of review that the evidence is inadmissible. See Kelley v United States, 236 F2d 746 (CA DC Cir) (1956); cf. United States v Grunewald, 233 F2d 556 (CA 2d Cir) (1956), cert granted 352 US 866, 1 L ed 2d 74, 77 S Ct 91. But, in our opinion, its admission was prejudicial.

It was apparent almost from the beginning of the trial that only one question existed in regard to the misappropriation charges. That question was the intention of the accused temporarily to deprive the squadron Red Cross fund of the $2.00 contribution by Colonel Smith and the squadron party fund of the unexpended balance of the collection. There was no direct evidence of the accused's intention. From the fact that he did not appear at the time and place fixed for the accounting for the party fund, a wrongful intention could be inferred by the court members. United States v Valencia, 1 USCMA 415, 4 CMR 7. The inference, however, was merely permissive. And, it could be refuted by a satisfactory explanation by the accused. Moreover, insofar as the Red Cross contribution is concerned, it is a close question as to whether an adequate basis for the inference was shown. Lt. Cassidy simply testified that after Colonel Smith "made his donation," he did not see the accused for the collection. According to the accused, Lt. Cassidy normally came into the Orderly Room to pick up the contributions "when he could get around to it." The

accused did not see the lieutenant after he received the $2.00 from Colonel Smith "until this morning in the courtroom," and at no time had he been asked for the money. In either case the accused's reliance upon his rights under Article 31 could be erroneously interpreted by the court members "as constituting an admission of guilt." United States v Kelly, 119 F Supp 217, 222 (D DC). Construed as admissions, the accused's statements give substantial color of criminality to what would otherwise be equivocal circumstances. Prejudice is, therefore, apparent.

The Government contends that, because the accused did not object at the trial to the inadmissible ■ evidence, he cannot now complain. See United States v DeCarlo, 1 USCMA 91, 1 CMR 90. The error, however, relates to the only real issue in the case, and it would be manifestly unjust if we applied the ordinary rule of waiver. United States v Smith, 2 USCMA 121, 6 CMR 121.

The decision of the board of review is reversed. The findings of guilty of specifications 1 and 2 of Charge I, and the sentence, are set aside. The record of trial is returned to The Judge Advocate General of the Air Force. A rehearing may be ordered on the stated specifications, together with a reconsideration of the entire sentence. United States v Field, 5 USCMA 379, 18 CMR 3. In view of our decision and the earlier dismissal of Charge III by the convening authority, if a rehearing on Charge I is deemed impracticable, a rehearing of the sentence on the basis of the approved findings of guilty of Charge II may be ordered. United States v Voorhees, 4 USCMA 509, 16 CMR 83.

Judges LATIMER and FERGUSON concur.