## UNITED STATES, Appellee

### v

## CHARLES L. SKEES, Private E–2, U. S. Army, Appellant

### 10 USCMA 285, 27 CMR 359

286

No. 12,197

Decided March 20, 1959

*First Lieutenant Philip J. Miller*, argued the cause for Appellant, Accused. With him on the brief was *Major Edward Fenig*.

*First Lieutenant Frank J. McGee* argued the cause for Appellee, United States. With him on the brief were *Major Thomas J. Nichols, First Lieutenant Jay D. Fischer*, and *First Lieutenant William H. Keniry*.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This case brings up for review the effect of certain statements by trial counsel at the trial and the sufficiency of the staff judge advocate's post-trial review.

Two of the three charges against the accused arose out of his failure to obey separate orders from his first sergeant and his company commander to perform "KP" (kitchen police duties). According to the evidence, the accused was purportedly the only trainee in his unit available for KP with another company in the period before Christmas. Apparently he reported to the mess hall as directed because he was observed "cleaning out" the refrigerator. But he did not remain. Outside the mess hall he had a conversation with Sergeant First Class R. H. Cope of his company. He was told to go to the orderly room. At about 7:00 a.m., Master Sergeant J. W. Ellis, his first sergeant, saw the accused in the orderly room. He gave the accused "a direct order to get into fatigue clothes and report to Company C for kitchen police." The accused started to leave; he got "partially out" the door, but turned back and remarked to the sergeant that he was not "going on KP." Sergeant Ellis asked where he was going and

**287**

the accused replied that "he was going to put on fatigues, but he wasn't going on KP." With that Ellis said: "If you are not going on KP, there is no need to get into fatigues." He told the accused to wait in the orderly room.

Taking up a position of "parade rest" near the stove, the accused remained in the orderly room. About fifteen minutes later Second Lieutenant F. Allgaier, the commanding officer, came in. He was told of the exchange between Sergeant Ellis and the accused. He called the accused and asked him if he knew of "the seriousness of the situation." Receiving an affirmative answer, he said: "Private Skees, I am giving you a direct order to go with PFC Balma, put on fatigues, and report right to C Company for KP." The accused indicated that he understood. He went to the door which was opened by Balma, then turned back to Lieutenant Allgaier and said, "No, I am not going." The Lieutenant replied, "Skees, if you are not going come right back here and you can go to the stockade." He directed Balma to draw a weapon from the arms room. In the meantime he "made out" a confinement order on the accused and on Balma's return he directed him to take the accused to the stockade.

Most of the above testimony was elicited from Lieutenant Allgaier and Sergeant Ellis. Sergeant Cope also testified for the prosecution. He witnessed both the Ellis and Allgaier incidents. According to his testimony, when Ellis gave him the order the accused said, "No, Sergeant." He also said in regard to the Lieutenant's order that Allgaier told the accused if he gave him an order "the penalty would be a lot stiffer." The accused remarked that he understood; the Lieutenant "waited and . . . [the accused] would have had time to say he would go on KP." But when he made no further comment the Lieutenant ordered him to "get on KP." The witness called the accused aside "to try to get him to obey the order." What transpired at that point is tied in with the claim of improper comment by trial counsel.

Testifying on cross-examination Cope

said the accused told him "he wouldn't do it." Defense counsel attempted to elicit from the witness the accused's explanation for his statement but trial counsel objected. On redirect examination trial counsel cautioned the witness to testify "only to what . . . [the accused] said in regard to whether or not he was going to obey the order" and not to give the accused's "explanation." Defense counsel objected on the ground that if part of the conversation came in, the other part was also admissible. What followed is set out below:

"Q. I didn't know you talked to him afterwards. You said you went over to him and he said he wasn't going to obey the order, is that correct?

"A. I went over to where he was standing and asked him to go back to KP so he wouldn't get in further trouble, sir.

"Don't testify as to his explanation, only to what he said in regard to whether or not he was going to obey the order.

"DEFENSE (Lt Wilson): Sir, if he testifies to part of the conversation the whole conversation should come in. If part of it is admissible, then the other part should also come in—it seems to me that it should, at least.

"PROSECUTION: No, that is not true unless part of the conversation would be misleading. We are attempting to establish that he didn't obey the order. If the accused wants to come in court and show that he had a good reason and explain why he did not obey the order, that is his prerogative.

"DEFENSE (Lt Wilson): It seems like this is a situation here where the accused has tried to explain to everyone.

"PROSECUTION: The accused can present that part of the case, he can call the witness back for that purpose.

"LAW OFFICER: The objection by the defense is well taken. The burden for proving the guilt of the accused beyond a reasonable doubt is upon the prosecution."

The witness then testified the accused told him he *"couldn't"* obey the order. On cross-examination defense counsel tried to inquire into the details of the conversation but was prevented from continuing by a ruling by the law officer on an objection by trial counsel:

"DEFENSE (Lt Disheroon): You opened it up.

"PROSECUTION: I didn't open it up, he said that he made the statement that he wasn't going to obey the order.

"DEFENSE (Lt Wilson): He didn't say he wasn't—

"DEFENSE (Lt Disheroon): He said he couldn't.

"PROSECUTION: All right, that he couldn't obey the order, in substance that he was not going to obey the order because he couldn't. If he wants to bring out why he couldn't, that is up to the defense counsel.

"LAW OFFICER: Objection sustained."

In closing argument trial counsel maintained there was not "much need to argue." He reviewed the evidence and contended the defense had been "reaching into the dark" but had been unable to find "anything upon which to base a defense." Elaborating on that point he said:

"As to whether or not the accused had opportunity to obey, they pointed out—the defense has contended or implied that the accused was put in a status of arrest and taken into custody, which prevented him from obeying the order. Well, the only way for that to be a defense is for him to say that the reason he did not obey the order is because he didn't have an opportunity as a result of being put in arrest."

No objection was interposed to trial counsel's remarks and the law officer gave no cautionary instructions to the court-martial about them. Appellate defense counsel maintain the statements constituted improper and prejudicial comment on the accused's failure to take the stand and testify. The Government's rejoinder is three-fold. First, it contends the statements are merely comments on the evidence and do not call attention to the failure of the accused to testify. In our opinion, however, at least the final statement by trial counsel was highly improper. In effect, he represented that only the accused himself could "say" why he would not obey the order. Since the accused did not say anything, the necessary inference trial counsel asked the court to draw was that the defense, set out by defense counsel, simply did not exist. We hold, therefore, that trial counsel's conduct was improper and constitutes error. United States v Allinder, 9 USCMA 575, 26 CMR 355; see also McKnight v United States, 115 Fed 972 (CA 6th Cir) (1902).

To avoid the effect of the error, the Government offers two arguments. It contends first the evidence is so strong against the accused that any improper comment by trial counsel could not possibly influence the verdict. It has indeed been held that if the evidence is "clear, convincing, and compelling," misconduct by Government counsel does not justify reversal of the conviction. Robbins v United States, 229 Fed 987 (CA 9th Cir) (1916). See also United States v Socony-Vacuum Oil, 310 US 150, 84 L ed 1129, 60 S Ct 811. The argument has only limited application to the facts in this case. The evidence of the unauthorized absence and the disobedience of the order of Sergeant Ellis is clear and convincing. It is also noteworthy that trial counsel's statements do not relate to either of these offenses. As to these offenses, therefore, we conclude that the improper comments did not prejudice the accused. But a different situation obtains as to Lieutenant Allgaier's order.

One of the Government's own witnesses testified that the accused said he "couldn't" obey the order. True, other witnesses maintained the accused indicated he *would not* obey the order, but it was for the court-martial to determine the fact. The defense had tried to draw from the witness the accused's explanation but

**289**

was prevented from doing so by the law officer's ruling. That ruling was erroneous. When part of a statement or writing is offered against the accused as an admission or confession, he is entitled to show the remainder "by cross-examination or otherwise." Manual for Courts-Martial, United States, 1951, paragraph 140a; United States v Cadman, 10 USCMA 222, 27 CMR 296. The argument and the ruling were made in the presence of the court-martial. Trial counsel's statement that "it was for . . . [the accused] to say" why he did not obey, recalls the erroneous ruling. Thus, the unmistakable import of the prosecutor's statement is that the accused's failure to testify should be considered against him. As a result the testimony that the accused *"couldn't"* obey the order is unfairly discredited.

The Government's second argument against the accused's claim of prejudice is waiver. Indeed, misconduct by the prosecuting attorney should be objected to by defense counsel. United States v Sims, 5 USCMA 115, 17 CMR 115. The failure to object, however, does not deprive the accused of the right to appellate review of the error if application of the rule of waiver results in a miscarriage of justice. In this case trial counsel's improper remarks are directly connected to an erroneous ruling by the law officer on an important issue raised by defense counsel's specific objection. In these circumstances, it would be a miscarriage of justice to disregard the error on the ground of waiver.

The accused's second claim of error concerns the sufficiency of the post-trial review. He contends the review is legally insufficient in that it fails to advise the convening authority he must be convinced of the accused's guilt beyond a reasonable doubt.

Before the convening authority acts on a general court-martial record of trial, he is required to receive the advice of his staff judge advocate. Article 61, Uniform Code of Military Justice, 10 USC § 861. In the advice,

the staff judge advocate must set out reasons for the opinions and recommendations expressed by him in regard to the case. Paragraph 85*b*, Manual for Courts-Martial, supra; United States v Fields, 9 USCMA 70, 25 CMR 332. If the opinions and recommendations are not supported by reasons, or if they are based upon improper legal standards, there is a fair risk the advice might mislead the convening authority in his action; in such circumstances, justice requires that the record be returned for a new review. United States v Bennie, 10 USCMA 159, 27 CMR 233; United States v Grice, 8 USCMA 166, 23 CMR 390. Here, the staff judge advocate thoroughly analyzed the evidence and the issues in the case. He gave his *opinion and recommendations supported by reasons of the legal and factual sufficiency of the important rulings by the law officer, and the findings of guilty and the sentence.* A reading of the review shows clearly he did all that the law requires of him. United States v Fields, supra. We pointed out in the *Grice* case, page 169, that the advice is "tantamount to informing the commander that he also" is bound by the legal standards set out by the staff judge advocate. Perhaps it would be better specifically to remind the convening authority of his responsibilities under the law, but the advice in this case is legally unassailable.

The findings of guilty of Charge I and its specification and sentence are set aside. The record of trial is returned to The Judge Advocate General of the Army for submission to the board of review. In its discretion, the board of review may dismiss Charge I and its specification and reassess the sentence on the basis of the remaining findings of guilty, or order a rehearing on the Charge and the sentence.

Judge FERGUSON concurs.

LATIMER, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

My associates and I reach agreement on the second issue, for the post-trial review was clearly sufficient in all material respects. However, the discussion

290

of the first issue concerning certain comments of trial counsel necessitates that I once again travel part of the way alone.

The nub of prejudicial error found by my brothers is contained in the following statement made by trial counsel during his closing summation. For the convenience of the reader I quote this comment and the language immediately following:

"As to whether or not the accused had opportunity to obey, they pointed out—the defense has contended or implied that the accused was put in a status of arrest and taken into custody, which prevented him from obeying the order. Well, the only way for that to be a defense is for him to say that the reason he did not obey the order is because he didn't have an opportunity as a result of being put in arrest. I think the evidence clearly indicates, and the witnesses so testified, that the accused had an opportunity to obey, that there was nothing to have prevented him from obeying the order, that is, if he disobeyed the order it was by refusing to act, and he refused prior to the time the Lieutenant ordered him into confinement, or ordered him to be taken into custody."

In my separate opinion in United States v Endsley, 10 USCMA 255, 27 CMR 329, I cited Morrison v United States, 6 F 2d 809 (CA 8th Cir) (1925), concerning the possible effect of a statement made by the law officer during trial. The *Morrison* case set out a fair measuring rod to determine whether a particular instruction violates the rule against improper comment. The court there announced the proper test to be:

". . . Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?"

Thirty years later in Knowles v United States, 224 F 2d 168 (CA 10th Cir) (1955), the *Morrison* test was reaffirmed and the court went on to state:

". . . It is not improper for the government to draw attention to the failure or lack of evidence on a point if it is not intended to call attention to the failure of the defendant to testify."

When I view the questioned statement in the light of these well-reasoned authorities, I have serious reservations about a holding which categorically finds error in trial counsel's closing argument. During trial, one of the prosecution witnesses had quoted the accused as having said, out of the hearing of those issuing the orders, that "he could not" comply with the command to report for KP. On the foundation of this minute scrap of testimony, together with accused's subsequent confinement, trial defense counsel sought to build an argument that accused was prevented from obeying the order by the acts of his superiors, and therefore that noncompliance was excusable. His motion for a finding of not guilty was in part supported by this argument but, despite his ingenuity, there is absolutely nothing in the record supporting such a tenuous theory. To the contrary, the evidence shows the accused carried on a running conversation with the officer and noncommissioned officers, yet at no time did he say to them that it was impossible to comply with the order— either because he was confined or for any other reason. It was in this posture of the record that trial counsel voiced his remark. To my mind, the language must be strained to reach the interpretation set forth in the prevailing opinion. Just prior to argument, the law officer had informed the court-martial members that trial counsel could not comment on the failure of accused to testify, and there was no mention in the statement of the accused's failure to become a witness in his own behalf. Therefore, I think the reasonable view is that the court-martial would interpret trial counsel's contention to mean that at no time had accused ever claimed he could not obey because he was in arrest. This was certainly within the bounds of fair argument, for trial counsel may comment on an accused's failure to in-

form the person giving the order that he cannot comply and had I been listening to his words during arguments, I would have been impressed in a manner similar to trial defense counsel. He heard the assertion and apparently concluded it was proper argument, for he made no objection to the statement. I have yet to be convinced that isolated comments—not inflammatory—which are lifted out of a complete argument, have an impact on a court adverse to an accused when the characters performing at the trial level are so unimpressed they remain silent. And even assuming the comment might have been misconstrued, had defense counsel registered an objection, I am certain the law officer could have taken appropriate action to cure any possible effect.

Still another reason compels belief that the reversal ordered by my associates is unwarranted. ■■■■■■■ As noted in the base opinion, the rule of the Federal courts is that if evidence of guilt is "clear, convincing, and compelling," misconduct of Government counsel does not justify reversal of conviction. Robbins v United States, 229 Fed 987 (CA 9th Cir) (1916); see also United States v Socony-Vacuum Oil, 310 US 150, 84 L ed 1129, 60 S Ct 811. To escape the force of this rule, my colleagues argue that with respect to Lieutenant Allgaier's order, the witness's use of the word "couldn't" created a question of fact that had to be resolved by the court-martial. I cannot subscribe to such a view of the testimony, for in my opinion the record displays beyond any doubt a deliberate and willful disobedience by the accused, unimpaired by a doubtful self-serving conclusion which, at best, is subjective and without evidentiary support. Four witnesses stated that the accused flatly refused to obey the order with no mention of any alleged incapability. The fifth witness, who in his testimony used the word "couldn't," also stated in the course of questioning that the accused had told him "he wouldn't do it." With the record in such posture, I must conclude our compelling evidence rule demands that this issue be resolved against the accused.

For the reasons stated herein, I would affirm the decision of the board of review.