UNITED STATES, Appellee

v

JESSE C. HICKMAN, Airman First Class, U. S. Air Force, Appellant

10 USCMA 568, 28 CMR 134

*Major Dwight R. Rowland* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Robert O. Rollman, Lieutenant Colonel James L. Kilgore,* and *Lieutenant Colonel Sam S. Carter.*

*Major Lawrence J. Gross* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Robert W. Michels* and *Lieutenant Colonel John F. Hannigan.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A special court-martial convicted the accused of assault upon Warrant Officer Wood, in violation of Article 91, Uniform Code of Military Justice, 10 USC § 891. It adjudged a sentence which includes a bad-conduct discharge.

Two related issues are presented for our consideration. The first concerns the admissibility of certain testimony; the second is whether trial counsel prejudiced the accused by referring to that testimony in his closing argument.

Two prosecution witnesses described the assault by the accused upon Warrant Officer Wood. They testified that the accused threw a metal card file at Wood and hit him in the chin. Wood also testified for the prosecution. He said that Sergeant Rossler, the accused, and he argued over whether a medical excuse from KP confined the accused to quarters or obliged him to perform light duty in the squadron area. The talk turned to the accused's unairmanlike appearance. The accused "became violent" and began "cursing." Wood called the commanding officer, but he was absent. He therefore talked to Captain Boyce, the Adjutant. He reported the accused's conduct and requested that the Captain "call the air police to come and apprehend" the accused. The accused then "started cursing" Wood. Captain Boyce, who was still on the telephone, was informed of that. The accused began "beating" the walls with his fist until they "were all bloody." The accused's "emotional display was something" Wood had never

before seen in his "entire" military and civilian life. Suddenly Wood felt a blow on the face; it dazed him. Then he saw blood "running from . . . [his] face onto the desk." At this point in his testimony, Wood was asked "Where was this cut?" He answered, "Across the chin," and continued with an extensive recital of the later events in the office. He said that Sergeant Rossler restrained the accused. About five minutes later Captain Boyce arrived at the office. He spoke to the accused and asked him "what seemed to be the matter"; the accused replied that "under Article 31, he didn't have any statement to make" and that was "all he did say." The Captain offered the accused a cigarette which the accused refused. The accused then "started crying" and remarked that his "five years in the Air Force have been wasted." The air police arrived and took the accused away.

In his final argument to the court-martial, trial counsel maintained that the evidence bore out "in toto" his opening statement. He contended it established that Warrant Officer Wood was the accused's superior officer and that the accused knew he was such. His argument continued as follows:

"The reason for this was the fact that they had previous dealings. He had addressed him previously as Mr. Wood, the proper title for a warrant officer and when asked what was the trouble about five minutes after this incident occurred, the accused stated

he had the right to refuse to answer any questions under Article 31."

Article 31 of the Uniform Code, 10 USC § 831, provides *inter alia* that no person subject to the Uniform Code may "request any statement" from one suspected of an offense without first informing him of the nature of the accusation and advising him that he "does not have to make any statement regarding the offense."

Unquestionably, Captain Boyce's appearance at Wood's office indicates he came to inquire into the incident. But Captain Boyce did not testify, and there is no clearly defined picture of whether he talked to the accused as a person suspected of an offense, or whether he was, as Adjutant, simply trying to ascertain the circumstances for the purpose of reporting to the commanding officer. See United States v McGriff, 6 USCMA 143, 19 CMR 269; United States v Dandaneau, 5 USCMA 462, 18 CMR 86. We assume for the purposes of this case that the accused's responses were inadmissible as evidence against him. United States v Kowert, 7 USCMA 678, 23 CMR 142. However, they were not affirmatively offered by the Government. Rather they were disclosed by the witness Wood in a wholly unresponsive answer, and were presented simply as part of a general recital of the events that transpired in his office. We can hardly charge trial counsel and the president of the court with resposibility for not anticipating the reply. United States v Johnson, 3 USCMA 447, 13 CMR 3. The question, then, is whether either should have acted *sua sponte* to strike the testimony. United States v Williams, 8 USCMA 443, 24 CMR 253.

The account of the exchange between the accused and Captain Boyce tends to evoke some sympathy for the accused's plight. It is not at all unreasonable to suppose that, in context, the court members would not draw any adverse inference from the accused's remarks. Considering the form in which the evidence was presented, its wholly incidental nature as part of a general description of the events, and the absence of objection by defense counsel, a quali-

570

fied lawyer, the failure of trial counsel to move, and the failure of the president to strike the testimony was not a violation of any substantial right of the accused.

A somewhat different problem is presented by trial counsel's argument. If nothing more had been said, it is possible that under the circumstances the court-martial might have been inclined not to draw an inference of guilt from the accused's reliance upon Article 31. However, trial counsel removed that possibility. What was inferential, he made explicit. He asked the court-martial to consider the accused's statement as direct proof of at least one of the elements of the offense. Thus the accused's right to say nothing was used against him. This was error.

Left for consideration is the effect of trial counsel's improper argument. It is well settled that "misconduct by a prosecuting attorney in his final argument does not justify reversal of an otherwise valid conviction if the evidence of guilt is clear and compelling." United States v Beatty, 10 USCMA 311, 314, 27 CMR 385. See also United States v Skees, 10 USCMA 285, 289, 27 CMR 359. The record of trial establishes beyond doubt the compelling nature of the evidence of guilt. Accordingly, we affirm the decision of the board of review.

Judge LATIMER concurs in the result.

FERGUSON, Judge (dissenting):

I dissent.

Tried by special court-martial, the accused was found guilty of assaulting his superior warrant officer, who was then in the execution of his office, in violation of Uniform Code of Military Justice, Article 91, 10 USC § 891. He was sentenced to a bad-conduct discharge, partial forfeitures, and confinement at hard labor for three months. Intermediate appellate authorities affirmed, and we initially granted review on the issue whether the accused was prejudiced by the trial counsel's argument that the former's reliance upon his right to remain silent under Code,

supra, Article 31, 10 USC § 831, established his guilt. Subsequently, on hearing oral argument, we directed counsel to file additional briefs on the question whether testimony that the accused had elected, prior to the trial, to remain silent was admissible in evidence.

The facts of this case are simple. The accused was discussing with two of his superior noncommissioned officers and a Warrant Officer Wood the scope of his medical excuse from duty. Wood secured information from medical authorities that the accused had been excused from performing kitchen police but not from "light duty." Wood transmitted this interpretation of the excuse to the accused and made some corrective remarks on the latter's dress and the condition of his room. The accused indulged in an outburst of rage and began cursing his superiors. Wood telephoned the Squadron Adjutant, Captain Boyce, and requested that the Air Police be summoned. While Wood was conversing telephonically with Captain Boyce, the accused threw a metal card file at him. The file struck Wood on the chin. Wood again informed Boyce that the Air Police were needed. Captain Boyce himself came to the scene, and the accused was subsequently placed in the custody of the Air Police.

At the trial, the following testimony was adduced from Mr. Wood by the trial counsel:

"Q. Where was this cut?
"A. Across the chin. I pulled my hankerchief to stop the flow of blood and after my conversation with Captain Boyce, I hung up. . . . I guess it was about five minutes later when Captain Boyce came into the office and spoke to Airman Hickman and asked him what seemed to be the matter. *Airman Hickman replied that under Article 31, he didn't have any statement to make and that is all he did say.*" [Emphasis supplied.]

In his opening argument to the court-martial, the trial counsel utilized the foregoing testimony as follows:

". . . We further feel that the evidence has shown that Warrant Officer Wood was the superior officer of the accused. This was proved by three witnesses and it is fairly obvious when the accused is only an Airman Second Class. *We also feel that the evidence has shown that the accused knew that Warrant Officer Wood was his superior officer.* The reason for this was the fact that they had previous dealings. He had addressed him previously as Mr. Wood, the proper title for a warrant officer *and when asked what was the trouble about five minutes after this incident occurred, the accused stated he had the right to refuse to answer any questions under Article 31.*" [Emphasis supplied.]

My brothers consider the admission of the testimony concerning accused's reliance upon his rights and the trial counsel's argument with respect thereto as separate errors. As such, they find there was no prejudice in either instance. Initially, I differ with that approach. The error in receiving evidence that the accused refused to make a statement prior to the trial lies in the possibility that the members of the court may have inferred that he recognized his own guilt and remained silent in fear of incriminating himself. United States v Armstrong, 4 USCMA 248, 15 CMR 248; United States v Kowert, 7 USCMA 678, 23 CMR 142. The trial counsel's argument is erroneous for the same reason, as he specifically directed the court-martial's attention to the accused's stated desire to remain silent and told the members in no uncertain terms that the claim of privilege was a factor proving accused's guilt. Hence, the fundamental question with which we are faced is whether the Government was permitted to use evidence that the accused invoked his rights under Article 31, Code, supra, in order to establish his guilt.

In United States v Armstrong, supra, we pointed out the propriety of the rule forbidding mere silence to be treated as a confession. Manual for Courts-Martial, United States, 1951, paragraph 140a. With respect to that interpreta-

tion of Article 31, Code, supra, we stated, at page 252:

". . . Indeed any other rule would violate the manifest policy of Article 31 of the Code, supra, for— if incriminated by reliance on his right to remain silent—an accused would indirectly be compelled to speak."

In United States v Kowert, supra, we were confronted with a less serious situation than that with which we are now faced. There, the trial counsel adduced the testimony of an officer who had previously interrogated the accused. After establishing that Kowert was advised concerning the nature of the offenses of which he was suspected and of his rights under Article 31, Code, supra, the trial counsel was permitted to question the officer concerning certain statements the accused had made to him. *Inter alia*, the officer testified that the accused refused to answer some questions "under provisions of Article 31." There was no objection by the defense. A unanimous Court found that accused's reliance upon Code, supra, Article 31, could have been erroneously interpreted by the court members as an admission of guilt. Refusing to permit manifest error to go unnoticed even in the absence of objection, we set aside Kowert's conviction.

A similar problem has been considered by the Federal courts. Thus, Mr. Justice Black pointed out, in Grunewald v United States, 353 US 391, 77 S Ct 963, 1 L ed 2d 931, the danger inherent in receiving evidence that the accused chose before a Federal grand jury to rely upon his privilege to remain silent:

". . . I can think of no special circumstances that would justify use of a constitutional privilege to discredit or convict a person who asserts it. The value of constitutional privileges is largely destroyed if persons can be penalized for relying on them.

"It seems peculiarly incongruous and indefensible for courts which exist and act only under the Constitution to draw inferences of lack of honesty from invocation of a privi-lege deemed worthy of enshrinement in the Constitution."

See also Kelley v United States, 236 F2d 746 (CA DC Cir) (1956).

In view of the foregoing precedents, I am at a loss to understand why my associates deem it necessary to "assume" that the receipt in evidence of accused's reliance upon his privilege was erroneous. Indeed, the situation herein presented is far more aggravated than that with which we were confronted in United States v Kowert, supra. There, only evidence of accused's invocation of his right to remain silent was received. Here, the trial counsel did not leave the court members in doubt concerning the use to which that inadmissible fact should be put, for he expressly sought to have them rely upon the accused's claim to establish that he knew Warrant Officer Wood to be his superior.

Having assumed the admission of the accused's reliance upon his privilege to be erroneous and having found it to exist in the case of the trial counsel's argument, the principal opinion seeks to avoid any concomitant determination of prejudice by relying upon such circumstances as the claim that receipt of accused's refusal to make any statement was "wholly incidental"; that the parties to the trial failed to take any action with regard to expunging it from the record; and that the evidence of accused's guilt was compelling.

With regard to the first factor, suffice it to say that the matter was no longer "incidental" following completion of the prosecution's argument. With respect to the second, I am unable to perceive how the failure of the trial counsel and the president of the court to strike inadmissible evidence can be utilized as a basis for determining that no prejudice resulted from its erroneous receipt. On the contrary, I should think that their failure to act is the very thing which gives the error pervasive effect. If the president had struck the evidence and instructed the other court members to disregard it, we would not now be faced with the issue whether it was used as proof of accused's guilt. With regard to the third

572

consideration, we did not find the absence of objection by counsel material in United States v Kowert, supra. As we said there, at page 682:

". . . The error, however, relates to the only real issue in the case, and it would be manifestly unjust if we applied the ordinary rule of waiver."

Finally, the proposition is also advanced that compelling evidence of accused's guilt cures the prejudice inherent in trial counsel's erroneous argument. This misapprehends the underlying basis of that error. We are not here dealing with overzealousness in urging accused's conviction. Rather, we are confronted with a gross violation of the Code, supra, Article 31. In such circumstances, we have repeatedly refused to apply the compelling evidence rule. United States v Josey, 3 USCMA 767, 14 CMR 185; United States v Williams, 8 USCMA 443, 24 CMR 253; United States v Nowling, 9 USCMA 100, 25 CMR 362; United States v Minnifield, 9 USCMA 373, 26 CMR 153; United States v Johnson, 9 USCMA 591, 26 CMR 371.

In essence, then, I believe that the instant case falls squarely within the forbidden area marked out by our decision in United States v Kowert, supra. The majority's conclusion overrules that case *sub silentio,* and ignores the holding of the Supreme Court in Grunewald v United States, supra. Thus, it condones a gross invasion of the accused's right not to incriminate himself and, in effect, does away with the protection of Code, supra, Article 31, for, if the penalty for remaining silent is to be faced with an inference of guilt, the accused is effectively compelled to speak. United States v Armstrong, supra. I cannot join in the disposition of an appeal which so strongly conflicts with the Congressional purpose in enacting Code, supra, Article 31, and which so completely ignores the influence that the trial counsel's argument in this case must have had on the court members. To subscribe to its result is to countenance the denial to this accused of a fair trial on the simple basis that, in any event, he is actually guilty. Such is totally inconsistent with the design of the Uniform Code of Military Justice and with the principles underlying our system of government.

In conclusion, I must also express my disagreement with the small value attached to judicial precedent in our disposition of this case. The rule of *stare decisis* is peculiarly valuable in the administration of criminal law. Only by adherence to its basic principles will we be able to afford to those officers charged with duties in connection with the administration of military justice that guidance which they require in order to implement the mandates of Congress. Subtle and unsound distinctions such as those set forth herein lead only to confusion and warrant the criticism that we too frequently react as men rather than judges. I prefer the sounder approach of consistent disposition of appeals and certificates in accordance with previously recognized principles of law.

I would reverse the decision of the board of review and authorize a rehearing.