UNITED STATES, Appellee

v

JAMES L. WORKMAN, Specialist Five, U. S. Army, Appellant

15 USCMA 228, 35 CMR 200

*Captain John C. Smuck* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk* and *Major George O. Taylor, Jr.*

*Captain John F. Webb, Jr.*, argued the cause for Appellee, United States. With him on the brief were *Colonel Edwin G. Schuck* and *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

FERGUSON, Judge:

Arraigned and tried before a general court-martial convened at Redstone Arsenal, Alabama, the accused was found guilty of wrongful appropriation of Government funds and sentenced to bad-conduct discharge and forfeiture of all pay and allowances. Intermediate appellate authorities affirmed, and we granted accused's petition for review on several issues, which will be hereinafter discussed. For the reasons set out below, we affirm the decision of the board of review.

### I

Accused was a clerk at Consolidated Mess Number 2, at Redstone Arsenal. As such, he was responsible for the preparation and maintenance of Mess Hall records, accounting for cash collected from certain Mess patrons for their meals, preparation of the necessary vouchers and supporting documents in connection therewith, and the remission of the funds to the local Finance Officer. In December 1963, a check of the records at the Mess and the Finance Office disclosed a shortage of these funds, amounting to $637.48, and accused's inability to account therefor resulted in his trial and conviction of wrongful appropriation.

As noted, the monies involved came from Mess patrons who, upon their entry into the Mess, signed a Cash Collection Sheet and paid the cost of their meals to a "headcount" noncommissioned officer. At the end of each day, the Cash Collection Sheet and the funds collected were turned in to the Mess, tallied against each other, and placed in the Mess safe. Whenever the amount on hand constituted $200.00, or at least once monthly, a voucher was prepared, supported by relevant Cash Collection Sheets, and turned in to the Finance Officer, together with the funds which it represented. A copy of the documents was receipted and returned to the Mess for its files. Deficiencies in these records led to accused's downfall, for, according to the record, he was the "one person solely responsible for the cash collections and the turn ins at Consolidated Mess Number 2," and it was his duty to "tally these sheets, make up the vouchers, have them signed by the Mess Officer, and make the turn ins."

### II

Appellate defense counsel initially urge the law officer erred prejudicially in refusing to rule in an out-of-court hearing as to the admissibility of certain pretrial statements taken from accused in violation of Code, supra, Article 31, 10 USC § 831, and by permitting repeated references to such statements in the hearing of the members of the court. The record does not support the contention.

The matter arose during the interrogation of Master Sergeant Welch, a witness for the prosecution, who was Mess Steward of Consolidated Mess Number 2 and accused's immediate supervisor. According to Welch, he examined the Mess records on December 1, 1963, and discovered that a voucher reflecting a turn in by the accused of funds supposedly collected in November

230

1963 was actually supported by Cash Collection Sheets governing payment for meals in September 1963. He also examined records at the Finance Office relating to the same matter, and noted that some of the Mess records were missing. He reported the matter to the Mess Officer on the following day, and returned to the Mess, where he "talked to . . . [Workman] about it." Individual counsel, conceding such might be premature, entered an objection "to any conversation with the accused" on the basis of a failure to advise him of his rights under Code, supra, Article 31. The law officer, *on his own motion,* ordered an out-of-court hearing to inquire into the matter.

In the hearing, trial counsel stated his intention to prove Sergeant Welch had, on four occasions, demanded that the accused produce the Government records missing from the Mess files; that he did not do so until the fourth occasion; and that, on such occasions, the accused made certain incriminating statements. Further, he announced his intention to show that the accused had approached his superior and asked for a pass, stating that it was his purpose to see if he could obtain a loan with which to replace the missing funds.

Argument was had by both sides, principally centering around the applicability of our decision in United States v Haskins, 11 USCMA 365, 29 CMR 181, to the duty of a custodian to produce Government records and property entrusted to his care. The law officer pointed out that, on the basis of counsel's offer of proof and the defense objection, he could not make a blanket ruling, and suggested the only fair thing to do was to permit the witness to resume the stand and "rule as each question is asked." Nothing in the record indicates whether this was to take place in open court or in the closed session. Thereafter, the law officer also opined that the trial counsel had failed to show the accused was a custodian in the sense of United States v Haskins, supra. Upon further objection by the defense on this basis, he ruled *in its favor,* leaving it open to the trial counsel to recall his witness and lay such further foundation as might be appropriate. Both sides indicated this procedure was clear to them, and the hearing was terminated.

Upon recall in open court, Sergeant Welch testified directly to accused's responsibility for the records in question and that he suspected the accused of either wrongfully appropriating the funds involved or embezzling them. Over maintenance of the defense objection, Welch was permitted by the law officer to testify to the refusal of the accused to return the missing vouchers on three occasions and his eventual production of them from some point outside the Mess after the fourth demand was made. The law officer, however, sustained the defense objection to several questions by the trial counsel designed to elicit statements made by the accused in connection with such demands, holding that a duty to advise the accused under Code, supra, Article 31, arose, once Welch suspected him of misconduct. After the final such ruling, he called a side-bar conference at which he pointed out the dangers inherent in persisting in such questions in open court, once Welch had testified as to his suspicions, and suggested that it might lead to declaration of a mistrial, if the defense so moved. He emphatically declared his intention to insure "there is no violation of this man's . . . rights," and his desire to avoid an impression by the court members that pertinent evidence was being withheld from them. Trial counsel abandoned further inquiry into the matter and defense counsel made no motion for a mistrial. More importantly, the record reflects that he at no time sought an out-of-court hearing in which Welch's testimony might have been developed in the absence of the members and without mention before them of the excluded statements.

We find nothing here to support the defense contention that the law officer forced development of the excluded matter in open court. To the contrary, the record demonstrates that he, on his own motion, excused the members and initially inquired into the sort of conversations with the accused which trial counsel intended to develop. Correctly appraising the situation as involving

possibly both admissible and inadmissible matter, he refused to rule hypothetically and suggested the recall of the witness and resolution of the issue on a more individualized basis. The parties were apparently agreeable to this, and it was only when the law officer himself, suggesting that the trial counsel had not yet produced sufficient evidence regarding a preliminary matter, unconnected with Code, supra, Article 31, ruled on this basis *in favor of the defense counsel,* that the hearing was terminated and the witness recalled to permit further development of this foundation in open court. Thereafter, although defense counsel reiterated his objection on the basis of failure to comply with the Article, he at no time sought an out-of-court hearing, or indicated the slightest disagreement with the termination of the hearing and the recall of the witness in open court. Nor, after testimony regarding accused's responsibility for the monies collected and the records maintained in connection therewith, did he, as inquiry again approached the critical area of possible statements by the accused, seek to have the matter heard and an adjudication entered out of the hearing of the members of the court. Once more, it was the law officer who, on his own motion, called a side-bar conference and pointed out the dangers of further interrogation of the witness regarding his conversations with the accused. Even then, no action was taken by counsel.

We have many times discussed the need for, and desirability of, out-of-court hearings in connection with the taking of evidence regarding the voluntariness of statements allegedly made by an accused. United States v Cates, 9 USCMA 480, 26 CMR 260; United States v Young, 10 USCMA 249, 27 CMR 323. On occasion, we have differed as to the scope of the right thereto and the effect of its denial. United States v Lock, 13 USCMA 611, 33 CMR 143; United States v Evans, 13 USCMA 598, 33 CMR 130. But the right has always been limited to such ▪ a hearing upon "the accused's request," United States v Young, supra, at page 251; United States v Cates, supra, at page 483. And, where he "was not denied a requested out-of-court hearing, but freely agreed to proceed in the presence of the court members . . . [h]e cannot now maintain that his own choice was prejudicial to him." United States v Lock, supra, at page 615.

This record fully establishes counsel made no request for an out-of-court hearing, though he was made aware of the opportunity therefor and the possibility of untoward influence upon the members by the trial counsel's examination in open court. Under such circumstances, we find no merit in the contention of appellate defense counsel, and resolve the assignment of error against accused. United States v Cates, United States v Lock, both supra.

### III

In its second assignment of error, the defense contends the law officer erred prejudicially in admitting, over proper objection, a statement obtained from the accused in violation of Code, supra, Article 31. The issue refers to the court's action in receiving evidence that, during the early part of December 1963, accused approached his superior, Sergeant Welch, and without any prompting or inquiry, asked "that he be given some time off . . . [to] negotiate a loan . . . [i]n order to turn the monies in, sir, the vouchers that were missing." Such evidence was introduced despite objection that, on this occasion, Welch suspected the accused of either wrongful appropriation or embezzlement of the funds involved and, therefore, had a duty to advise him of his rights under Code, supra, Article 31.

Appellate defense counsel argue that, as the record shows accused had been earlier questioned by Welch concerning the missing records and monies without the benefit of a proper warning and had made incriminating admissions (which were, as noted above, not received in evidence), he had "already 'let the cat out of the bag,' *United States v Bayer,* 331 US 532," and his approach to Welch, without the interposition of a proper advice, was the fruit of these earlier statements. We disagree.

First, as to the duty to advise accused

232

upon his approach to the Mess Steward, the record demonstrates █ Workman voluntarily sought out Welch of his own accord, and without prompting or interrogation, asked permission to be absent from his duties, stating the incriminatory reason therefor. Such a spontaneous approach, involving neither an interrogation nor request for any statement by Welch, does not permit, much less require, a preliminary warning under Code, supra, Article 31. United States v Creamer, 1 USCMA 267, 3 CMR 1; United States v Dandaneau, 5 USCMA 462, 18 CMR 86; United States v Simpson, 12 CMR 255, *pet den*, 3 USCMA 840, 14 CMR 228. As we said of a similar occurrence in United States v Caliendo, 13 USCMA 405, 32 CMR 405, at page 410:

". . . Since Wolf appeared at Sergeant Maflin's residence voluntarily and there was no interrogation or request by the latter resulting in the return of the [stolen] sheets, there was no necessity for a warning in this instance."

Secondly, we cannot agree there is any demonstration here of accused's request for time off from his duties as being the fruit of the poisonous tree. At the outset, we note the Government was entitled to call upon him for the production of the missing records which had been entrusted to his custody. United States v Haskins, supra; McPhaul v United States, 364 US 372, 380, 5 L ed 2d 136, 81 S Ct 138, 143 (1960). And Sergeant Welch testified without contradiction that he asked accused only about the records and not about the missing monies. Moreover, we find nothing in the latter's excluded responses which can be said to have impelled him on a later occasion to have come forward and voluntarily incriminate himself. And whether "evidence is 'fruit of the poisonous tree'" is not governed by the inquiry whether "it would not have come to light but for the illegal actions of the police. . . . [but rather] the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Wong Sun v United States, 371 US 471, 487, 9 L ed 2d 441, 83 S Ct 407 (1963). As the foregoing indicates, there is a complete absence in this transcript of any evidence of exploitation by Welch of an earlier failure to advise the accused of his rights, or that the accused made his request on the basis he had already let the cat out of the bag.

Finally, we point out that several days had apparently elapsed between Sergeant Welch's inquiry to the accused and the latter's request for permission to be absent. Of a similar space of time in Wong Sun v United States, supra, the Supreme Court declared:

". . . Wong Sun's unsigned confession was not the fruit of that arrest, and was therefore properly admitted at trial. On the evidence that Wong Sun had been released on his own recognizance after a lawful arraignment, and had returned voluntarily several days later to make the statement, we hold that the connection between the arrest and the statement had 'become so attenuated as to dissipate the taint.' Nardone v United States, 308 US 338, 341, 84 L ed 307, 312, 60 S Ct 266." [Wong Sun v United States, supra, at page 491.]

For this and the other reasons set out above, we reject the defense contention that the law officer erred in admitting accused's statement to Sergeant Welch regarding his reasons for requesting time off from his duties.

IV

In like manner, we must disagree with the contention that the law officer prejudicially failed to submit to the court-martial the question whether Sergeant Welch was required to advise the accused of his rights under Code, supra, Article 31, prior to the statement of his reasons for desiring to be granted a pass. United States v Dandaneau, supra; United States v Creamer, supra;

**233**

United States v Caliendo, supra. As we have noted, the evidence reflects a purely voluntary and spontaneous approach to the Mess Steward by accused which did not permit, much less require, that advice to be given. United States v Caliendo, supra. There was no demonstration, on this record, that such request was the fruit of earlier unwarned interrogations. Wong Sun v United States, supra. No issue requiring instructions was, therefore, raised by the evidence, and in the absence of such, there was no instructional error. United States v Gorko, 12 USCMA 624, 31 CMR 210; United States v Fears, 11 USCMA 584, 29 CMR 400; United States v Grover, 10 USCMA 91, 27 CMR 165.

## V

Finally, the accused asserts it was prejudicial error to receive evidence that he had, during the course of another pretrial interrogation, in reliance upon his rights under Code, supra, Article 31, elected to remain silent, and for the law officer to fail, *sua sponte*, to instruct the court that no inference of guilt should be drawn from such silence. The matter arose in the following manner.

Staff Sergeant Henry W. Little, a criminal investigator, was called as a prosecution witness to testify as to a lawful search of the accused's person and the seizure from him of certain documents relevant to the case, after a full and proper warning under Code, supra, Article 31. Objections to the receipt of these documents on grounds not connected with the question before us were sustained, and a defense declination of cross-examination was followed by a question of a member as to whether accused had made any statement, following the warning, and this colloquy:

"A: The first time I interviewed him that morning—

"LO: Before that answer can come in, the defense has a right, if it so desires to offer evidence relating to the voluntariness of any statement made by the accused as a result of interrogation by the CID agent.

"IC: We don't desire to do so at this time. However, we have an objection. Apparently the witness is going back to something that happened earlier in the day now.

"LO: This question must be limited to any statement made by the accused as to time of the interrogation on 19 December 1963, after the warning was given. Do you understand that, Mr. Little?

"A: Yes, sir.

"LO: All right. You may answer the question as to any conversation with the accused after having warned him of his rights only on 19 December 1963.

"A: On 19 December 1963, I warned him of his rights at approximately 0855 hours, and told Specialist 5 Workman what he was suspected of. He told me that he had not had time to discuss it with legal counsel and therefore was not in a position to make any statement regarding the offense at that time."

The accused argues that permitting the court "to predicate a finding of guilt, even in part, on an accused's reliance on his rights against self-incrimination" is clearly erroneous. We fully agree and have repeatedly so held. United States v Kemp, 13 USCMA 89, 32 CMR 89; United States v Brooks, 12 USCMA 423, 31 CMR 9; cf. United States v Bayes, 11 USCMA 767, 29 CMR 583; United States v Bolden, 11 USCMA 182, 28 CMR 406; and United States v Kowert, 7 USCMA 678, 23 CMR 142. Here, however, there was no direct mention of reliance upon accused's rights against self-incrimination but merely an explanation by him to the agent that he desired to consult with his counsel prior to making a decision in the premises. Assuming, nevertheless, the testimony should not have been received as being of the same character as that which we condemned in United States v Kemp and the other cases cited, supra, the real issue is whether its admission in the course of the agent's testimony and the absence of an instruction thereon was prejudi-

cial. That such involves the standard of specific prejudice is not open to doubt. Code, supra, Article 59, 10 USC § 859; United States v Bolden, supra; United States v Hickman, 10 USCMA 568, 28 CMR 134. Evaluating the error by that standard, we are compelled to conclude, under the circumstances here presented, there was no fair risk of harm to the accused's rights. United States v Hickman, supra.

The evidence, *aliunde* the agent's remark, compellingly establishes accused's guilt. The uncontradicted proof shows he had sole responsibility for the tabulation and turn in of the funds involved, as well as maintenance of the records. There were substantial discrepancies in the turn ins and the vouchers involved were supported by documents referring to other collections. In like manner, some of the records themselves were missing from the files and were produced by the accused only after four demands were made therefor. See United States v Haskins, supra; McPhaul v United States, supra. An examination of the funds on hand disclosed a shortage in the amount alleged and, as accused's own counsel brought out, an additional shortage of $8.00, which accused himself made up. True, as counsel argues, there were no eyewitnesses to Workman's peculations, but the circumstances here set forth draw the noose just as tightly and leave no room for the court members to have speculated concerning implications of guilt which may have been present in his desire to consult with counsel prior to making a statement to Sergeant Little. Cf. United States v Hickman, supra. We, accordingly, find no fair risk of prejudice to him from receipt of the testimony or the failure of the law officer to advise the court with respect thereto.

The assignments of error having been determined to have no merit, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge KILDAY concur.