# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, HERRING, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist AUSTIN L. HENDRIX**
**United States Army, Appellant**

ARMY 20140476

Headquarters, 21st Theater Sustainment Command
David H. Robertson, Military Judge
Colonel Jonathan A. Kent, Staff Judge Advocate

For Appellant: Lieutenant Colonel Jonathan F. Potter, JA; Major Christopher D. Coleman, JA; Captain Jennifer K. Beerman, JA (on brief).

For Appellee: Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Steven J. Collins, JA; Captain Linda Chavez, JA (on brief).

18 July 2016

------------------------------------
OPINION OF THE COURT
------------------------------------

PENLAND, Judge:

A panel with enlisted representation sitting as a general court-martial convicted appellant, contrary to his plea, of one specification of sexual abuse of a child, in violation of Article 120b, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 920b (2012). The panel sentenced appellant to be discharged with a dishonorable discharge, to be confined for thirty months, to forfeit all pay and allowances, and to be reduced to the grade of E-1. The convening authority approved the adjudged sentence.

We review this case under Article 66, UCMJ. Appellant raises two assignments of error, one of which merits discussion but no relief. We have considered matters personally submitted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982); they lack merit.

We hold the military judge did not err when he denied the defense motion to suppress evidence of the victim's identification of appellant during an Army-administered voice identification procedure.[1]

## BACKGROUND

On 10 June 2013, appellant and Private First Class (PFC) BW visited a fellow soldier, Specialist (SPC) PK, and his family at SPC PK's quarters in Germany. In the early evening hours, SPC PK's ten year-old daughter, JK, retired to her bedroom. As she tried to fall asleep, a person whom she later identified as appellant entered her room, sat down on her bed, and rubbed her vulva with his fingers for five to ten minutes. JK was unable to see appellant's face in the darkness, but he spoke to her, asking, "Is your sister asleep?" He also said, "Promise me you won't tell anybody." The next day, JK reported the sexual abuse and a law enforcement investigation began.

JK moved stateside with her family soon after and began to receive trauma counseling. Within the first two or three sessions, JK told her therapist "Austin" was the person who sexually abused her.

After the Article 32 investigation, government counsel requested U.S. Army Criminal Investigation Command (CID) present JK with a "voice lineup." CID officials in Germany obtained voice recordings from appellant, PFC BW, three CID agents, and a fourth person unrelated to the case. These six voices were recorded, saying in three ascending volume levels: "Is your sister asleep?" and "Promise me you won't tell anybody." Each person's voice was randomly assigned a number. The six voices were arrayed into three uniquely-ordered "segments" and numbered differently in each segment.

In March 2014, JK listened to the voice recordings at a CID office in Virginia. She was not informed of the speakers' identities. After the first segment, JK indicated numbers three (SA NZ) and four (appellant) sounded like the man who sexually abused her. After the second segment, she identified number two (appellant) as the abuser's voice. After listening to the third segment, JK identified number six (appellant) as the abuser's voice.

---

[1] The parties refer to this procedure as a "voice lineup." This term is somewhat colloquial and should be avoided, for it invites confusion over applicable legal protections. In the context of criminal procedure, a "lineup" is the law-enforcement technique of having a witness attempt to identify a single person of interest from multiple persons compelled to simultaneously present themselves before the witness. Whereas this case involves the identification of a voice from a recording. As discussed *infra* whether an identification is a "line up" is critical to determining whether there is an accordant right to counsel.

Defense counsel was present when CID agents obtained the voice recordings from appellant and the others. However, despite defense counsels' efforts to attend the voice identification, a CID agent conducted this procedure without them.

Before trial, the defense moved the court to suppress the voice identification for two reasons. First citing, *inter alia*, Military Rule of Evidence [hereinafter Mil. R. Evid.] 321, defense counsel argued the process was "unnecessarily suggestive" and "conducive to irreparable mistaken identification." Second, citing Mil. R. Evid. 321 and multiple United States Supreme Court cases, the defense counsel argued appellant's Sixth Amendment right to counsel was violated when the voice recordings were played for JK's review outside defense counsel's presence.

After an Article 39(a) session, the military judge summarily denied the motion but informed the parties that he reserved "the right to supplement [his] rulings with essential findings of fact and conclusions of law at a later date." At trial, the government called the CID agent who conducted the voice identification with JK in Virginia. The agent described the procedure he followed, and he described JK's multiple identifications of a numbered voice. However, the military judge sustained the defense objection to the government's attempt to introduce investigative documents which associated appellant's name with the voice which she identified. After trial, the military judge issued a "Court Ruling on Defense Motion to Compel Witnesses and Suppress Voice Line-Up":

> [T]he Government elected not to admit the voice lineup into evidence. Therefore, the Court will not issue findings of fact and conclusions of law as it relates to its ruling on the motion to suppress this voice lineup.

## ANALYSIS

We disagree with the military judge's tacit conclusion that the voice identification dispute was moot. While the government did not admit the voice identification per se—for example, the voice exemplars were not offered or admitted—the government did present ample testimony regarding the procedure and its results. Though we afford little deference to the military judge's ruling in light of his decision not to provide findings of fact and conclusions of law, we nonetheless conclude he did not err in denying the motion. We address appellant's two complaints regarding the out-of-court identification seriatim.

*A. Unnecessarily Suggestive Pretrial Identification*

Mil. R. Evid. 321(b)(1) provides an exclusionary rule against an "identification [that] is the result of an unlawful lineup or other unlawful identification process . . . conducted by the United States or other domestic

authorities." The rule first defines "unlawful" as an "identification process [which], is so suggestive as to create a substantial likelihood of misidentification." Mil. R. Evid. 321(c)(1).

To determine whether the process violated these rules, we must examine the factual circumstances surrounding JK's voice identification. The voice recordings were part of an appellate exhibit submitted to the military judge during the pretrial motion session, and the defense stated it had no objection to his considering them in deciding the motion. Upon listening to the recordings, we find as a matter of fact that the tone, cadence, and volume of each voice to be remarkably similar to one another.[2] Turning to the session during which the recordings were played for JK's review, we also find the following based on the evidence at trial and the pre-trial motion session: JK was summoned to the CID office in Virginia without prior knowledge that she would be asked to identify her assailant's voice; JK was not allowed to consult anyone else while listening to the recordings; JK was not asked to identify appellant–instead, she was asked whether she recognized any of the voices as her abuser's. Based on the foregoing, we conclude the voice identification process was neither unnecessarily suggestive nor conducive to "a substantial likelihood of irreparable misidentification." *United States v. Chandler*, 17 M.J. 678, 681 (A.C.M.R. 1983) (citing *Manson v. Brathwaite*, 432 U.S. 98, 107 (1977)).

### B. Right to Counsel at Voice Identification

Appellant argued both at trial and on appeal that the government violated the Sixth Amendment and Mil. R. Evid. 321 by conducting the voice identification session with JK outside the presence of his counsel. While we resolve this matter against appellant, the issue's importance, and somewhat infrequent treatment, cause us to decide this case in precedential form.

Beyond its first definition of unlawful, *supra*, Mil. R. Evid. 321(2) provides:

> (2) In Violation of Right to Counsel. A lineup is unlawful if it is conducted in violation of the accused's right to counsel:
>
> (A) Military lineups. An accused or suspect is entitled to counsel if, after preferral of charges or imposition of pretrial restraint under R.C.M. 304 for the offense under investigation, the accused is required by persons subject to

---

[2] Article 66(c), UCMJ provides us with the authority "to determine controverted questions of fact."

the code or their agents to a *lineup* for the purpose of identification. . . .[3]

(emphasis added.).

This rule mirrors the Sixth Amendment right to counsel at post-indictment lineups. *See United States v. Wade*, 388 U.S. 218 (1967). The rule does not define "lineup," a fact noted in the drafter's analysis of its previous version. *Manual for Courts-Martial, United States* (2012 ed.), Appendix 22-32. We agree with the analysts' remark, "recourse to case law is necessary." *Id*. We need look no farther than *Wade* and *United States v. Ash*, 413 U.S. 300 (1973).

In *Ash*, the U.S. Supreme Court held that the Sixth Amendment does not grant the right to counsel at a post-indictment photographic display conducted by the government to allow a witness to identify an offender. (*Id*. at 301, 321). The Court explained, "our cases have construed the Sixth Amendment guarantee to apply to 'critical' stages of the proceedings" in a modern criminal prosecution, such as a preliminary hearing or when entering pleas because there, counsel's assistance is meaningful. *Id*. at 309-11. Examples of "one-sided confrontation between prosecuting authorities and the uncounseled defendant," which were not "critical" include collecting fingerprints, hair, clothing, and other blood samples. *Id*. (citing *Wade* 388 U.S. at 227-28). Additionally, the Court pointed out its holding in *Gilbert v. California*, 388 U.S. 263, 267 (1967), that "the taking of handwriting exemplars did not constitute a 'critical stage.'" *Ash* at 319, n. 10.

Based on these cases, we conclude that a lineup involves the corporeal presence of an accused before government witnesses. We recognize appellant was compelled to present himself to CID authorities in order to speak–in a non-testimonial way–so a recording could be made of his voice. When appellant was ordered to provide this recording, counsel was present. However, the playback of his and others' recorded voices to JK outside his presence under the circumstances of this case was not a lineup for purposes of the Sixth Amendment. Instead, this event was akin to a photo array, as in *Ash*, and appellant was not entitled to his counsel's presence under either Mil. R. Evid. 321 or the Sixth Amendment. *See also United States v. Akgun*, 19 M.J. 770, 771 (A.C.M.R. 1984) (affirmed on other grounds by *Akgun*, 24 M.J. 434 (C.M.A. 1987)).

---

[3] Neither party disputes that the voice identification occurred after preferral.

## CONCLUSION

The findings of guilty and sentence are AFFIRMED.

Senior Judge CAMPANELLA and Judge HERRING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court